## JAMES MOYNIHAN'S APPEAL FROM COUNTY COMMISSIONERS.

## GEORGE R. APEL'S APPEAL FROM COUNTY COMMISSIONERS.

First Judicial District, Hartford, October Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The Act of 1901, Chap. 183 (Rev. 1902, § 2645), permits the county commissioners to reject an application for a liquor license, upon finding that there already exist in the neighborhood a sufficient number of licensed places; and gives the applicant a right of appeal to the Superior Court, which is empowered to hear and determine it. *Held : —*

1. That the statute must be construed in the light of the interpretation already given to " appeals" authorized in similar cases, by the Acts of 1893 and 1899, and that so construed it was not unconstitutional as imposing upon the Superior Court the discharge of purely administrative functions.

2. That the Act did not require the court to retry the cause for the purpose of substituting its own conclusion as to the sufficiency of the saloons in a given locality for that of the county commissioners.  It is enough if it appears that the action of the county commissioners was just and reasonable, and within the limits of the powers vested in them.

The duty of determining whether a sufficient number of licensed places exist in a given locality is one which can be satisfactorily performed by an administrative board like the county commissioners, but it is not one for which the Superior Court is adapted, even if such duty can be constitutionally imposed upon it.

Argued October 9th and 14th, 1902—decided January 7th, 1903.

APPEALS from the refusal of the county commissioners for Hartford County to grant liquor licenses, taken by the respective applicants to the Superior Court in said county and tried to the court, *Thayer, J.*; facts found and judgment rendered dismissing the appeal in each case, and appeal by the applicants for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*Harry M. Burke*, for the appellant (Moynihan).

*Herbert O. Bowers*, for the appellant (Apel).

*Marcus H. Holcomb* and *Olin R. Wood*, for the appellees (county commissioners).

HAMERSLEY, J.  The main questions presented by this appeal relate to the appellant's claim that the Act (Public Acts of 1901, Chap. 183, Rev. 1902, § 2645) empowering the county commissioners to reject any application for a license, upon finding there already exists, in the town or in the vicinity of the place for which a license is asked, a sufficient number of licensed places, subject to the right of appeal by the

applicant in the same manner as appeals are now taken, is void. The claim is, that the appeal thus provided is in effect the ordinary process for transferring a cause from an inferior to an appellate court for retrial, and imposes upon the Superior Court the purely administrative powers and duties of an administrative board, which the court is incompetent to exercise upon the principle laid down in *Norwalk Street Ry. Co.'s Appeal*, 69 Conn. 576 ; and that the power given to the commissioners is so dependent upon the right of such appeal that the invalidity of that part of the Act providing for the appeal involves the invalidity of the whole Act.

It is a sufficient answer to this claim, that the construction thus given to the provision for an appeal cannot be maintained. It is well settled that the legislature cannot give the Superior Court appellate jurisdiction of this kind in matters committed to executive officers. In certain instances, where appropriate process is provided, the court may set aside acts of administrative officers for unlawful conduct in excess of their power. Such process for controlling the unlawful conduct of county commissioners, in granting or refusing licenses, has been provided by the legislature under the name of "appeal." Public Acts of 1893, Chap. 175 ; Public Acts of 1899, Chap. 223. The word "appeal," as thus used, has been construed as providing for an original application to the Superior Court to exercise its appropriate judicial power in respect to acts done by the county commissioners in excess of their power, or in the unlawful abuse of that power. "Such appeal is a process by which the Superior Court is enabled to determine the legality of certain specified actions of the county commissioners." *Wakeman's Appeal*, 74 Conn. 313, 315 ; *Norwalk Street Ry. Co.'s Appeal*, 69 id. 576, 600 ; *Malmo's Appeal*, 72 id. 1, 8, 9 ; *Bradley* v. *New Haven*, 73 id. 646, 650. When the legislature uses the word "appeal" in the Act of 1901, it must be held to use it with the same meaning attached to the word in the Acts of 1893 and 1899.

This view of the statute disposes of the substantial error claimed by the appellant ; but another claim was involved

in the argument, which may be stated thus: In sustaining the legality of the commissioners' conduct it was not sufficient for the court to satisfy itself that the commissioners acted fairly, honestly and reasonably in rejecting the application, but it must also be satisfied upon an original investigation that it would itself reject the application. This claim is inconsistent with the nature of the application to the Superior Court authorized by statute. The intervention of the court is based upon some illegal conduct by the commissioners in the execution of purely administrative powers. We said in *State* v. *Wilcox*, 42 Conn. 364, 371, in speaking of our statute as first enacted in 1872, that the granting of licenses and other powers therein contained " are police regulations, quite fit and proper to be exercised by municipalities, county commissioners, or boards of selectmen, for the protection of the morals and health, and the promotion of the prosperity, of their particular localities." We said in *Underwood* v. *County Commissioners*, 67 Conn. 411, 416, that the power and duty to grant licenses, conferred and imposed upon the commissioners, " are administrative and not judicial in their nature." The illegal exercise of this power may be restrained by the court, but the power itself to issue a license in a lawful manner is vested solely in the commissioners. Indeed, the plan and purpose of the legislation regulating the sale of liquors depends upon the supervision given to the commissioners, who for this reason have the sole power to license, but only for the period of a single year. *Malmo's Appeal*, 72 Conn. 1, 7. It may be true that the legislature may provide for the issue of licenses by an inferior court, upon conditions appropriate to the exercise of its judicial power, but it plainly would be impracticable to accomplish in that way the main objects secured by the present legislation. That treats the issue of licenses as purely administrative, and the question of what limitations might be involved if it were treated as judicial, cannot arise. *Malmo's Appeal*, 72 Conn. 1, 5.

The questions brought before the court by the application are these: Have the commissioners acted illegally? Have the commissioners exceeded or abused their power? All

matters to be considered by the court are incident to the examination of these questions. Ordinarily the illegality claimed must consist in a disregard or misunderstanding of the statutory qualifications for a license, or of the limitations upon its issue. These questions arise upon the application as an original process and may call for an original investigation, and in this qualified sense ·there may be a hearing *de novo* in respect to the issue of a license.

The statutory qualification most frequently called in question is that which requires the licensee to be a suitable person and his place of business a suitable place. The word "suitable" may be so used as to involve nothing more than a direction to appoint a proper person, but we held in *Smith's Appeal*, 65 Conn. 135, and in *Hopson's Appeal*, ibid. 140, that the word was not so used in our statute, but was used to define a statutory qualification calling for an interpretation of a judicial nature as well as an exercise of personal judgment. So long as there was no special process for testing the legality of the commissioners' action, the discretion involved in personal judgment was practically the controlling feature; and so we held in *Batters* v. *Dunning*, 49 Conn. 479, that this discretion could not be controlled by the writ of mandamus. But when in 1893 a special process was provided for testing the legality of the commissioners' action in refusing or granting a license, the existence of all statutory qualifications was involved, as bearing on the illegality claimed.

The substantial statutory qualifications are these: As to person—the licensee must be suitable, must not have been convicted of violating the law, etc., must not be a sheriff, or other officer, grand juror, justice of the peace, etc., must, if a female, be known to the commissioners to be a woman of good repute, and must not keep· a house of ill-fame nor a gambling place. As to place—the place of sale must be suitable, must not be on fair grounds, nor in a dwelling with access to saloon, nor in the part of cities not effectually policed, nor in the purely residential or manufacturing parts of a town, nor in those parts of a license town where it is

apparent the applicant is seeking patronage from an adjoining no-license town.

It is evident that the consideration of these qualifications, as bearing upon the question of legality, cannot be the same in all cases. The illegality of granting a license to a person who has been convicted of violating the law, is certain; while the affirmation of illegality in granting a license to a female not known to the commissioners to be a woman of good repute, is difficult if not impracticable; and the illegality of granting a license to a person who is not suitable, would hardly be affirmed, unless it should be apparent that the commissioners acted under some misapprehension, or the possession of the qualification should appear to the court so clear as to imply a want of judicial temper and fairness in the commissioners amounting to misconduct. When the action of the commissioners is based upon the existence or nonexistence of statutory qualifications, the court, in reaching its conclusion as to the claimed illegality, may consider and pass upon these qualifications; but the proceeding is so peculiar, so different from an ordinary judicial contention, requiring so much of that personal judgment which involves judicial discretion, that its final action is not open to review by this court in the same manner and to the same extent as an ordinary final judgment. But until 1899 the action of the commissioners might be independent of the question of qualification. They might refuse a license because, in their judgment, the best interests of the community, under the due administration of law, required a refusal. *Malmo's Appeal,* 72 Conn. 1, 8. This power, of adapting the issue of licenses to the exigencies of public interest, is placed primarily in the towns, which decide from time to time whether public interest justifies the issue of any license. Originally this decision was expressed by a vote forbidding the selectmen from recommending any person for a license, and when no such vote was passed the selectmen were authorized to decide to what extent the public interests justified the issue of licenses. After this power was taken from selectmen, the imperative form of the law, directing the commissioners to license qual-

ified persons recommended by the selectmen, was changed to its present permissive form, viz, " The county commissioners . . . may," etc. Public Acts of 1889, Chap. 117, Rev. 1902, § 2643. From that time until 1899 the commissioners had a discretion in the issue of licenses to qualified persons, where the exigencies of public good justified its exercise. In 1899 the discretionary power was taken from the commissioners, and in 1901 was again given to them, in a modified form, by the statute under discussion. The statute does not relieve the commissioners from the duty of licensing qualified persons, unless they become satisfied that a sufficient number of licensed places exist in a particular town or locality; but when they find that a sufficient number do exist, then they may reject or grant the application of a qualified person for an additional license, as in their judgment may best serve the good of the locality. It is plain that such a discretion is liable to abuse, and equally plain that the considerations of local interest, and conditions determining the administrative policy which would justify its exercise in any particular case, may be within the grasp of an administrative board like the county commissioners, but are impracticable for a court to ascertain and apply, even if it could be lawfully burdened with such duties.

The power, however, as given to the commissioners is not arbitrary, and its unfair or unreasonable exercise may be such as should render the rejection of a license unlawful. For this reason the revesting of such power in the commissioners, by the Act of 1901, is expressly stated to be subject to the existing right to invoke the judicial power for testing the legality of the commissioners' conduct, by the original application to the Superior Court called an appeal. Misconduct in such case may be shown by direct evidence of arbitrary, unfair, and partial treatment, and may be indicated by facts which the commissioners knew, or should have known, of which facts the number of existing licenses may be one; but it is evident that the court cannot ascertain all the facts and considerations of administrative policy which

might properly influence the commissioners in the performance of duties imposed upon them.

In the present case the court ascertained the number of existing licensed places, and, so far as appears, heard all the evidence offered and entertained all the considerations bearing upon the conduct of the commissioners, and was convinced that the commissioners acted honestly and reasonably in forming their judgment as to the sufficient number of licensed places, and as to their duty, in the due administration of the law, to reject this application for an additional license.  It was not the duty of the court, nor was it practicable for it, to judicially determine what its own opinion might be if it stood in the place of the commissioners, endowed with the same powers and means of information and charged with the same administrative duty.

Our legislation in respect to the sale of intoxicating liquors assumes that such traffic is dangerous to public health and morals, and makes it unlawful unless as permitted by administrative officers, in localities where, in their judgment, the public good may be served by such permission. The power of determining this administrative policy is given primarily and mainly to the towns, but secondarily, to a limited extent, to the county commissioners, who have the sole power to issue licenses to qualified persons.  The Act of 1893 sought to minimize the danger of an occasional abuse of the power vested in the commissioners, by providing a process for invoking the power of the court to test the legality in a particular case, of the commissioners' exercise of their power.  To this end it created a sort of legal right in the would-be beneficiary of a license on the one hand, and in any taxpayer of the town on the other, in the lawful performance of their public duties by the commissioners.  This purpose controls the Act of 1901.  The court has sought, without undue questioning, to administer such powers so as to give effect to the legislative intent that the judicial power may be exercised so far as practicable, in the prevention of an unlawful abuse of the power vested in the commissioners; but the legislation cannot be interpreted as imposing upon

the Superior Court, and even upon this court, the duties of a licensing board under conditions inconsistent with the legitimate exercise of judicial power.

The dismissal of the appeal by the Superior Court did not involve an erroneous construction of the statute. The errors claimed as to the conduct of the court, in reaching its conclusion upon the suitability of place, cannot be considered. *Malmo's Appeal*, 73 Conn. 232, 238; *Hopson's Appeal*, 65 id. 140, 149.

As the foregoing reasons apply to, and must control the disposition of Apel's Appeal, there is no occasion for a separate opinion in that case.

There is no error in either case.

In this opinion the other judges concurred, except BALDWIN, J., who dissented.

BALDWIN, J. (dissenting). As the case of Apel's Appeal presents more clearly the ruling of the Superior Court under which it dismissed both appeals, my reasons for dissent refer especially to that case.

Two statutes were passed in 1901, which went into effect on the same day and related to the same subject. One provided that "any board or court before which an application for license is heard may consider the number of existing licensed places, in the town wherein the license is applied for, as bearing upon the question of suitability of place." Public Acts of 1901, p. 1263, Chap. 126 (Rev. 1902, § 2645). The other, entitled "An Act concerning Appeals from County Commissioners," was as follows: "The county commissioners may reject an application for license for the sale of spirituous or intoxicating liquors, upon finding that there already exists in the town or in the vicinity of the place for which a license is applied, a sufficient number of licensed places; subject to a right of appeal by the applicant from such doings of said commissioners to the superior court of the county in the same manner as appeals are now taken, and said court is hereby empowered to hear and determine such

appeals." Ibid., p. 1387, Chap. 183 (Rev. 1902, § 2645). Soon after these statutes took effect, the appellant applied for a license to sell liquors at a certain place in Manchester, and the county commissioners refused to grant it on the ground that this place was in a purely residential part of the town, which was already supplied with a sufficient number of saloons. He thereupon appealed to the Superior Court, where he made no claim that the commissioners had acted arbitrarily or from an improper motive in finding that there were already saloons enough in the locality in question, but did claim, and offer evidence tending to show, that in fact there were not enough of them to supply the wants of the community. The court, however, ruled that "when the county commissioners had fairly determined the number of saloons which should be licensed in a locality, the court was incompetent to determine that a greater number should be licensed, and held that said place was not a suitable place to receive a license, solely upon the ground, as found by the county commissioners, that the locality is already supplied with a sufficient number of saloons," and thereupon dismissed the appeal.

To support this ruling, it is necessary to hold, either that the legislation of 1901 was unconstitutional and void, or that its apparent meaning is not its real meaning.

In previous cases we have affirmed the following propositions: The function of determining who are suitable persons to receive licenses for selling liquors is one which lies on the border line of the division between executive and judicial power, and it is competent for the legislature to commit its exercise either to judicial or executive officers, as may be found necessary for the most efficient enforcement of its police regulations. *Hopson's Appeal*, 65 Conn. 140, 146. If it be committed in the first instance to executive officers, it can be committed, at a second stage of proceeding, for the purpose of reviewing their doings, to judicial officers, and whenever so brought before a court becomes a cause of a judicial nature. *Beard's Appeal*, 64 Conn. 526. When appellate jurisdiction of an application for a

license is given to a court, it may be granted the same discretionary powers in determining whether the applicant is a suitable person, and his place of business a suitable place, which primarily belonged to the original executive tribunal. *Hopson's Appeal*, 65 Conn. 140, 149.

If, therefore, the intent of the legislation of 1901 was to invest the Superior Court with power to consider the number of saloons already existing in a certain locality, with a view of coming to an independent judgment of its own as to whether there were so many that no other was needed there, it would seem that there could be no constitutional objection to giving full effect to such intent. *Malmo's Appeal*, 72 Conn. 1, 5.

The remaining question is as to whether such is the fair construction of the statutes in question. In Chapter 126, the reference to "any" court can only refer to the Superior Court, for no other has jurisdiction in respect to applications for liquor licenses; and to an appeal to that court, for in no other way has such jurisdiction been conferred upon it. The Superior Court was, therefore, it seems to me, expressly invested with power, upon an appeal from the county commissioners, to consider the number of places already licensed, as tending to show whether the place for which the applicant sought a license was a suitable one. Whatever facts a court can lawfully consider must be the proper subjects of evidence. In the case at bar, the trial court heard evidence as to the number of saloons already existing; but then proceeded to deny it any legal effect, on the ground that it had no power to determine whether the number which it found to exist was a sufficient number. It seems to me that the issue on such an appeal must be whether a license ought to be granted or refused, and that it was as bearing on that ultimate question that Chap. 126 meant that the fact which it allowed to be introduced should be considered. I think that it does violence to its plain terms, when read in connection with the unqualified appeal given by Chap. 183, to limit the jurisdiction of the court, in respect to that fact, to determining whether the number had been properly ascertained and

properly considered by the county commissioners. If the words of a statute, under which it is claimed that functions which are but *quasi*-judicial have been imposed upon a court, are doubtful, that construction may sometimes with propriety be adopted which best promotes that general scheme of the distribution of the powers of government between three departments, which is a leading feature of our constitutional system. On that principle, a provision in a previous statute, relating to appeals from a refusal of a license by county commissioners (Public Acts of 1899, p. 1138, Rev. 1902, § 2658), was held not to constrain the Superior Court to make a finding as to whether too many saloons were already in existence. *Malmo's Appeal*, 73 Conn. 232, 237. But the Acts of 1901 were passed after that decision, and presumably in view of it. In my opinion they were intended to make plain and did make plain an intent which the Act of 1899 left doubtful. How far it is wise to go in making our courts a place of resort for obtaining licenses to sell liquor, it is for the General Assembly to say, so long as it imposes on them no duty which cannot reasonably be considered as of a judicial nature. Constitution of Conn., Art. V, § 1. The function of passing upon applications for such licenses is one both judicial and executive, and can properly be committed to the judicial department or to the executive department, or to both. *Hopson's Appeal*, 65 Conn. 140, 146. I therefore dissent from the opinion and judgment of the court.