MARY POWERS *vs.* THE HOTEL BOND COMPANY (HOTEL BOND COMPANY'S APPEAL FROM COMPENSATION COMMISSIONER).

First Judicial District, Hartford, January Term, 1915.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The Workmen's Compensation Act (Public Acts of 1913, Chap. 138) is remedial in character and its provisions are to be broadly construed to effectuate its purpose.

Hitherto the fault of the employer has been a prerequisite to a recovery of damages in a tort action by an injured employee. The Workmen's Compensation Act is founded on the theory that its provisions become a part of the contract of employment when the parties to the contract so elect, and that compensation for injury to the workman, arising in the course of his employment and not due to his intentional or wilful misconduct, shall be made regardless of his fault.

The Compensation Commissioner, under our Act, is not a court but an executive officer engaged in administrative duties.

The "appeal" to the Superior Court from the finding and award of the commissioner, which is authorized by § 27 of the Act, does not confer the right to a retrial of the facts *de novo*,—a procedure which would nullify the obvious purposes of the Act and add to the burdens of all parties,—but is an original application invoking the exercise of the judicial power of the Superior Court in order to determine whether the findings and award of the commissioner are so unreasonable as to justify judicial interference, and whether they are within the limits of the powers vested in him; if they meet this test, the decision reached by the commissioner must stand, otherwise his award may be set aside by the Superior Court.

The Act contemplates that the finding and award of the commissioner shall give all facts essential to the case in hand, and shall state such

Powers *v.* Hotel Bond Co.

questions of law as were ruled on by the commissioner as well as those made by the appellant; the word "finding" being used in the same sense as in General Statutes, §§ 759, 763, requiring a finding of facts upon which the judgment is based.

The question whether a claimant was partially "dependent" upon a deceased employee or not, is one of fact to be determined upon the evidence presented in that particular case; and the conclusions reached by the commissioner with respect to that fact, which are dependent upon the weight of evidence and the credibility of witnesses, are not reviewable by the court.

In the present case there was evidence that the decedent contributed to the support of his mother, and that she, while not immediately dependent for sustenance upon such contributions, was, because of advancing years, condition of mind, lack of regular employment and of property, liable to become dependent. *Held* that it could not be said, as matter of law, that this evidence had no tendency to prove a condition of partial dependency.

Dependency may exist though the contributions are irregular in time and amount, and, because of other income by the recipient, are not essential to the support of life; the test being whether they are relied upon by him for his means of living according to his class and position in the community.

To establish a condition of dependency it is not necessary that the contributions should approximate the minimum amount of compensation ($5 per week) prescribed by § 9 for fatal injuries; and therefore in any case of partial dependency the commissioner is justified in making an award of the statutory amount.

The word "trial" in our statutes does not necessarily involve a hearing on the facts.

Argued January 12th—decided February 23d, 1915.

APPEAL from an award by the Compensation Commissioner of the first district under the Workmen's Compensation Act of 1913, taken to and tried by the Superior Court in Hartford County, *Bennett, J.;* having found that no error was committed by the commissioner in the application of the legal principles pertinent to the cause, judgment was rendered dismissing the case, from which the respondent appealed.   *No error.*

*Philip Pond* and *Ralph O. Wells,* for the appellant (respondent).

*Charles Welles Gross,* for the appellee (claimant).

WHEELER, J.   The respondent duly took its "appeal" to the Superior Court from a finding and award made by a commissioner under the Workmen's Compensation Act of 1913.   Public Acts of 1913, p. 1735, Chap. 138.

Its appeal to this court from the judgment of the Superior Court raises the questions whether the trial court erred: (1) in holding that it had no jurisdiction to retry issues of fact, but only to revise errors of law or unlawful proceedings on the part of the commissioner; (2) in holding that the commissioner did not unlawfully find that the claimant was a partial dependent; and (3) in holding that the commissioner acted lawfully in awarding weekly compensation of $5 for three hundred and twelve weeks on account of the death of John J. Powers.

The first question—whether on appeal to the Superior Court the case is to be tried *de novo*—is one of very great consequence to the workman and to the employer.   It is also of large consequence to the State, for we are told by counsel that during the short period of the existence of the Act upward of eighteen thousand cases of injury have been reported.

The Act neither defines the scope of the appeal nor fixes its procedure.   We must ascertain this from a construction of § 27, which gives the appeal, but that of necessity compels a search of all of the provisions of the Act and an understanding of its spirit and an appreciation of its origin and purposes.

The modern theory of the law of torts makes the fault of the employer a prerequisite to a recovery of damages by an injured workman.   Workmen's Compensation Acts such as ours are founded upon the theory of a contract existing between workman and employer, an implied consideration of which is provision for compensation for injury to the workman arising

in the course of his employment and not through his intentional or wilful misconduct. Fault is the foundation of the tort action: compensation for the injury regardless of the fault, of the Compensation Acts. The principle of the Act is new in our law. The statute is remedial in character, and its provisions are to be broadly construed in order to effectuate its purpose. *Bentley's Case,* 217 Mass. 79, 80, 104 N. E. 432; *Panasuk's Case,* 217 Mass. 589, 592, 105 N. E. 368. The originators of these Acts also believed that they would lessen accident. Some of the considerations behind them were economic: the hardship and difficulty involved in proving the workman's case, the great waste in procuring a recovery, the delay in obtaining the relief, the uncertainty oftentimes in determining the cause of the accident, the vastly increased dangers and the impossibility of personal supervision by the employer under modern conditions of employment, and the necessity of the workman accepting employment under conditions of increased danger or suffering loss of livelihood. Some considerations were moral: the prevention of the tendency of some workmen to press unfounded claims and of others to exaggerate just claims, and the tendency of some employers to defend by means of questionable fairness.

Thus the Act, by eliminating the proof of negligence, by minimizing the delay in the award and by making it reasonably certain, seeks to avoid the great waste of the tort action and to promote better feeling between workman and employer, and accepts, as an inevitable condition of industry, the happening of accident, and charges its cost to the industry. It imposes upon an employer, presumably, his share of a common loss in a common industry. The period of compensation is limited as a "concession," it is said, "to expediency," although logically the spirit and

purpose of the Act can only be met by having the period commensurate with the period of injury or dependence. The Act is elective rather than compulsory in form, in order to avoid a claim of its unconstitutionality; in fact it induces its acceptance by depriving an employer of more than five, who refuses its terms, of the three common-law defenses: contributory negligence, assumption of risk, and fellow-servant. The deprivation of an employer, under such circumstances, of these defenses, is said to be "merely a declaration by the legislature of the public policy of the State in that regard." *Deibeikis* v. *Link-Belt Co.*, 261 Ill. 454, 464, 104 N. E. 211. Neither employer nor workman, unless he so choose, comes within the Act. When both so elect, the Act becomes a part of the contract of employment.

The certainty of the receipt of compensation for injury follows the Act. Its procedure contemplates a speedy investigation and hearing by a commissioner, without the formalities of a court and without, as a general rule, the employment of an attorney. It attempts to improve the condition of the workman under modern methods of industry by giving him partial recompense for an injury, with a result more certain and speedy and less expensive than under the former method in tort litigation. If the Act permits each cause to be appealed and tried *de novo* in the Superior Court, its objects will be defeated, and more delay, less certainty, and more expense will ensue to the claimant than with the single trial of the old method. We may not lightly presume that the legislature intended to set up a new system, the result of long agitation, much study and the fullest publicity, and then deliberately, in the very Act creating its new system, pull down the work of its hands. Compensation Acts have had a common origin and a common

history, and the great majority of the twenty-four thus far enacted in our States bear close resemblance to each other in essential features. In only three of the twenty-four, we believe, is a retrial of issues of fact permitted on appeal from an award. And unless the Acts have expressly given a retrial, the courts have construed them to intend the contrary. *Pigeon's Case,* 216 Mass. 51, 52, 102 N. E. 932; *Donovan's Case,* 217 Mass. 76, 77, 104 N. E. 431; *Herrick's Case,* 217 Mass. 111, 112, 104 N. E: 432; *Bentley's Case,* 217 Mass. 79, 80, 104 N. E. 432; *Main Colliery Co.* v. *Davies,* 16 Times Law Rep. 460; 2 Butterworth's Workmen's Compensation Cases, 105.

Our Act was undoubtedly passed with full knowledge of other similar Acts of common purpose. A uniformity of construction of provisions similar to ours, and essential to its life, while not conclusive, is certainly a persuasive reason for similarly construing our Act. If the commissioner is a court, the legislature can confer upon the Superior Court appellate jurisdiction of his findings and awards; but if he is an executive officer engaged in administrative duties, it cannot confer appellate jurisdiction of his findings and awards. *Moynihan's Appeal,* 75 Conn. 358, 360, 53 Atl. 903. If the commissioner is a court, his appointment by the Governor and not by the General Assembly was in violation of Article Fifth of our Constitution. *State ex rel. Yaple* v. *Creamer,* 85 Ohio St. 349, 400, 97 N. E. 602, 607. Some of the duties devolving upon the commissioner are *quasi*-judicial, and some are wholly executive or administrative. He determines facts upon the classes of evidence allowed, and applies the law to the facts found, and renders judgment which affects the property rights of litigants before him and which may be enforced by execution issued as of course out of the Superior Court. He may hear the

applicant at his residence. He proceeds to hearing without pleadings and without regard to the ordinary rules of evidence. He may make his inquiry through oral or written and printed records best calculated to ascertain the substantial rights of the parties. He receives, files and transmits all notices required by the Act. He supervises agreements made between the employer and his workmen. He is the adviser of all and the umpire between the disputants. Such a tribunal clearly is not a court.

It may well be that the case tried before the commissioner may be a very different one from that tried before the court, if on appeal the case is retried on the facts. Evidence which may have satisfied the commissioner may not, under the rules of evidence, be admitted in the Superior Court; so that the conclusion of the commissioner may be reached upon an entirely different basis of fact from that the Superior Court could take. The procedure of each tribunal is greatly variant. We may not believe that the General Assembly intended one form of trial and one set of facts before the commissioner, and quite a different set of facts and mode of trial before the Superior Court; for such course would impair the purposes and nullify the benefits of the Act.

While the Act is silent as to the questions which the appeal may raise, its implications are really as expressive as words. An "appeal" from an administrative official or board to the Superior Court is a familiar remedy in our statute law. We hold such "appeal" to be an original application to the Superior Court to exercise its appropriate judicial power in respect to acts done by the administrative tribunal in excess of its power, or in the unlawful abuse of that power. *Moynihan's Appeal*, 75 Conn. 358, 360, 53 Atl. 903. When the finding and award of the commissioner

appealed from are unauthorized in law, irregular or informal, or based upon a misconception of the law, or of the powers or duty of the administrative tribunal, or are so unreasonable as to justify judicial interference, we may, on appeal, set aside the award. *Norton* v. *Shore Line Electric Ry. Co.*, 84 Conn. 24, 35, 78 Atl. 587. The Superior Court cannot retry the facts. The theory of such "appeals," and our practice relating to them, has not sanctioned such course. The trial court pertinently pointed out the resemblance of our proceeding before an arbitrator to the proceeding before the commissioner, in the agreement of the parties to submit their differences, in the procedure on the hearing, and in the award. The court will not, upon remonstrance to the award, re-determine facts; similarly the court will not, upon appeal from the award of the commissioner, re-determine facts.

The respondent points out certain words in the Act which, it asserts, supports its claim that the General Assembly intended to have a trial *de novo* on appeal. Thus, § 27 provides that all such appeals "shall be privileged in respect to their assignment for trial." It is said that by "trial" is meant a trial of facts in the Superior Court. Our statutes do not as a rule use the word "trial" with such technical nicety. A similar use to the one under consideration is found in General Statutes, § 2660. "Trial," when used in our statutes, does not necessarily mean a hearing on the facts. Thus, in Part B, § 26, it is provided that if no appeal is taken within ten days after the decision of the commissioner, "said finding and award shall be final"; and the respondent claims that the necessary corollary of this provision is that if such appeal is taken, the "finding and award" shall not be final. But we think the true corollary is that the finding and award may not be final if some substantial error of law has been

found on appeal, otherwise it will be.   Thus, Part B, § 1, provides that employees and employers accepting the Act waive certain rights, "including the right of jury trial on all questions affecting compensation," and as no right to jury trial exists in a hearing before an administrative board, it is said the right of trial by jury must refer to the hearing on appeal in the Superior Court.   In our view this was an unnecessary provision, but one used by the General Assembly through an abundance of caution to guard against a possible constitutional objection, thereby preventing delays and appeals.   A further claim suggests that since the Act does not provide for a detailed finding of facts, nor for the separation of questions of fact and law, it would be seldom possible to have a ruling on questions of law reviewed on appeal.   Under our interpretation the finding and award must give all facts essential to the case in hand, and such questions of law as were ruled upon by the commissioner and such as were made by the appellant.   No other or further detailed finding is required.   The "finding" of § 26 means a finding in the sense in which that term is used in our statutes, requiring a finding of the facts upon which the judgment is based.   General Statutes, §§ 759, 763.

We come, then, to the second question: Did the court err in overruling the appellant's claim that upon the finding and evidence, as matter of law, the claimant was not a dependent?

The Act, § 43, defines a "dependent" by specifying the classes to which the dependent must belong, and by confining dependents to those members of these classes who were wholly or partially dependent upon the earnings of the employee at the time of the injury. It conclusively presumes certain persons standing in a certain relation to a deceased employee to be

totally dependent. "In all other cases questions of dependency, total or partial, shall be determined in accordance with the fact, as the fact may be at the time of the injury." § 10. Questions of dependency are thus by the Act made questions of fact. Had the Act not definitely settled this point, we should have inclined to this view both on reason and authority. *Herrick's Case,* 217 Mass. 111, 112, 104 N. E. 432; *Main Colliery Co.* v. *Davies,* L. R. (1900) App. Cas. 358. The ultimate question is the application of the proper standard to the facts found. The court may review the standard applied: it cannot review the facts found, except in those instances in which our law permits such review. In this case there was evidence that the deceased contributed to the support of his mother, and that she, while not immediately dependent for sustenance upon such contributions, was, because of advancing years, condition of mind, lack of regular employment and of property, liable to become dependent. We cannot hold, as matter of law, that this evidence did not tend to prove that the mother had been receiving support from her deceased son and was not partially dependent upon him. Nor can we hold, as matter of law, that evidence such as this did not tend to prove a condition of partial dependency. A "dependent," under the Act, is not necessarily one to whom the contributions of the injured or deceased workman are necessary to his or her support of life; the test is, whether the contributions were relied upon by the dependent for his or her means of living, judging this by the class and position in life of the dependent. *Howells* v. *Vinan & Sons,* 85 Law Times Rep. 529; 1 Bradbury's Workmen's Compensation (2d Ed.) 573. Partial dependency may exist, though the contributions be at irregular intervals and in irregular amounts, and though the

dependent have other means of support.   1 Bradbury's Workmen's Compensation (2d Ed.) 574.   Dependency is thus, in each case, a fact to be determined.   *Main Colliery Co.* v. *Davies,* 16 Times Law Rep. 460.   The record does not disclose that the commissioner applied a standard of dependency other than that required and contemplated by the Act.   The court cannot review conclusions of fact made by a commissioner which merely concern the weight of evidence and the credibility of witnesses; and rulings of this character are the only ones involved in the decision of the partial dependency of this claimant.   If the commissioner had found facts which might materially have influenced his decision, without evidence, or if the subordinate facts found neither legally nor logically supported the ultimate fact, or if the commissioner had refused to consider facts which would have been relevant to his decision and which the record did not show had not affected the decision, he would have committed an error of law, and his ruling or decision would have been reviewable.   Such is not this case. *Gray's Appeal,* 80 Conn. 248, 251, 67 Atl. 891; *Brown* v. *Clark,* 80 Conn. 419, 423, 68 Atl. 1001.

The third question upon the appeal is whether the commissioner erred in making an award of $5 a week in a case in which the dependency did not approximate that sum.   This claim is rested upon the propositions that the contributions, to establish a condition of dependency, must have been necessary to the sustenance of the dependent, and must have been substantial, which in this sense is said to mean an approximation to the minimum amount set in the statute. We have already held that partial dependency may exist although the alleged dependent could have subsisted without the contributions of the deceased.   There is nothing in the Act from which it must be inferred

that the contributions must approximate the minimum amount set by the Act. Section 9 of the Act provides that "the compensation payable on account of death resulting from injuries shall in no case be more than ten dollars or less than five dollars weekly." The General Assembly has thus, in explicit terms, made the minimum weekly payment on account of death from injuries $5. Considerations of public policy dictated the adoption of this minimum: its wisdom is not our concern. A minimum might be adopted which would plainly violate constitutional rights of property; that objection has not been, and cannot be, made to this provision.

There is no error.

In this opinion the other judges concurred.