WILLIAM THOMAS GHERARDI *vs.* THE CONNECTICUT COMPANY (THE CONNECTICUT COMPANY'S APPEAL FROM COMPENSATION COMMISSIONER).

First Judicial District, Hartford, January Term, 1918.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

Without attempting to phrase a complete and exhaustive definition of the word "dependent," as used in our Workmen's Compensation Act, it may be said in a broad and general way, that aside from those conclusively presumed to be dependents by the statute, no one whose financial resources are sufficient, unaided, to sustain himself and family in a manner befitting his class and position in life, is entitled to be regarded as a dependent or partial dependent. While a claim of dependency is not to be defeated by mere proof that the claimant can by the exercise of his best endeavors support himself and family by his own unaided efforts, yet, inasmuch as it is not the purpose of the law to give aid and comfort to slackers in respect of their obligations as members of society, such a claim will meet defeat if it appears that the claimant, by the expenditure of such efforts as under all the circumstances ought fairly and reasonably to be expected of him, is able to support himself and family in a manner suitable to his or their station.

In the present case the plaintiff, a single man twenty-two years old, claimed to be a "dependent" of his father, who died while employed as a lineman of the defendant. The son had been working steadily for three months prior to his father's death and continued to do so down to the time of the hearing before the Compensation Commissioner eleven months thereafter, earning thirteen dollars per week and during all of this period was self-supporting. He was not physically strong and at times had been irregular in his work, and when idle his father had helped him financially, but there was no evidence of such assistance for several months next prior to his father's death. *Held* that inasmuch as the claimant was apparently capable of earning enough to support himself and his idle periods were due to parental indulgence and folly, he was not a "partial dependent" within the meaning of the Workmen's Compensation Act.

Argued January 2d—decided April 30th, 1918.

APPEAL by the defendant from a finding and award of the Compensation Commissioner of the first dis-

trict in favor of the plaintiff, taken to and tried by the Superior Court in Hartford County, *Burpee, J.;* the court confirmed the award and dismissed the appeal, and from this judgment the defendant appealed. *Error and judgment set aside.*

December 26th, 1915, Joseph Gherardi, a long-time employee of the defendant as a lineman, while engaged in his work, was, after an unusually strenuous day's exertion in the repair of its lines and poles thrown into disorder by a severe snow and wind storm, seized by what the Compensation Commissioner has found was an acute dilation of the heart, and shortly thereafter on the same day died therefrom. The finding of the Commissioner is that the heart attack was caused by the deceased's unusual expenditure of strength immediately prior thereto, and was the result of an injury arising out of and in the course of his employment.

The deceased was forty-nine years of age and a widower. The claimant was his only child and lived with his father, both boarding. At the time of his father's death he was twenty-two years of age. The finding of the Commissioner, in so far as it bears further upon the relations of the father and son, was as follows: "The claimant was not physically strong, nor did he present the appearance of a robust young man. He was irregular in his work, and during periods when he was idle he always secured financial aid from his father, whom he saw every Sunday. During the month of September prior to the aforesaid injury, when the claimant was out of employment, his father had given him board, clothing, spending money and car fare, to the amount of $35. During the previous June he had paid his board and given him money to the amount of $25. Other assistance was given from time to time as needed. No books were kept, and it is not possible from the testimony to arrive at

the exact amount which the father had given the son during the few months previous to his death. At the time of the father's death the son was working for the New Departure Manufacturing Company, in Elmwood. He had tried the line of work at which his father was engaged and had to give it up on account of his health. There was no evidence of any contributions by the father to the support of the son during the months of October, November, and December."

The record sent up by the Commissioner also shows certain other conceded facts testified to by the claimant. He began work for the New Departure Manufacturing Company, as stated in the finding, in September, 1915, earning $13 a week, and remained in that employment continuously until his father's death and down to the hearing before the Commissioner, which took place November 13th, 1916. During all this time he was self-supporting.

Upon these facts the Commissioner ruled that the claimant was a partial dependent of his father at the time of the latter's death, and awarded him compensation as such partial dependent.

*Seth W. Baldwin,* for the appellant (defendant).

*Frank P. McEvoy,* for the appellee (plaintiff).

PRENTICE, C. J. The Compensation Commissioner, with evident hesitation, held that this claimant was, at the time of his father's death, a partial dependent of the latter, and awarded him compensation accordingly. This conclusion and award appear to have been largely, if not entirely, controlled by the fact that the son had been from time to time in receipt of financial aid from his father, and that, brought up as he had been, he had become accustomed to rely upon such contributions for his maintenance.

The customary receipt of financial assistance from another, although supplying a welcome and helpful aid to self and family support, does not suffice to convert the recipient into a dependent or partial dependent of the donor, nor does it suffice that the donee has come to rely upon the contributions so made in the provision of that support. It is indeed true that dependency arises only where financial aid has been furnished and has come to be relied upon by the recipient for purposes of support. But those are by no means the only conditions that must exist to create dependency, as our Workmen's Compensation statute uses that term. There must, in addition, be a reliance on the assistance received for the purpose, and for no other or broader purpose, than that of providing self and family with the means of living, judged by the class and position in life of the recipient. *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 152, 93 Atl. 245; *Blanton* v. *Wheeler & Howes Co.*, 91 Conn. 226, 231, 99 Atl. 494; *Simmons* v. *White & Bros.*, 80 Law Times Rep. 344, 345.

Nor is that all. Dependency involves the existence of another important condition. One may live in idleness and actual dependence without being what our compensation law regards as a dependent. No such encouragement is given to sloth and conditions inducive of pauperism, as would result from the continuance at an employer's expense of habits of indolence on the part of would-be dependents. Parents may, if they will, pamper their children and indulge them in habits of nonexertion and reliance upon others, but the law does not accept situations thus created as ones it is called upon to foster or aid in continuing. In other words, the law does not necessarily accept conditions as they exist at the time of a workman's decease through the creation of the parties responsible for them, as conclusively determining a state of dependency. It rather

looks to all the circumstances to discover what in fairness and right they ought to be. One who, as the result of parental affection, indulgence, weakness or folly, has been permitted to grow up in idleness and a love of ease, may not, for that reason alone, successfully pose as a dependent entitled to continued assistance. If there are other reasons why he may not under all the circumstances reasonably be expected to be self and family supporting by the exercise of reasonable efforts to that end which he is competent to make, the situation becomes fundamentally changed and the conditions of dependency begin to appear.

We have no purpose to attempt to phrase a complete and exhaustive definition of the word "dependent" as our statute uses it. But this much may be said broadly and generally, that no one, not belonging to the enumerated classes of persons conclusively presumed to be dependent, is entitled to be regarded as a dependent or partial dependent, whose financial resources, at his command or within his power to command by the exercise of such efforts on his part as he reasonably ought to exert in view of the existing conditions, are sufficient to sustain himself and family in a manner befitting his class and position in life without being supplemented by the outside assistance which has been received or some measure of it. See *Blanton* v. *Wheeler & Howes Co.*, 91 Conn. 226, 231, 99 Atl. 494. Of course, a claim of dependency is not to be defeated by mere proof that the claimant can by the exercise of his best endeavors support himself and family by his own unaided efforts. *Howells* v. *Vivian & Sons*, 85 Law Times Rep. 529, 530; *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 152, 93 Atl. 245. But as it is no purpose of the law to give aid and comfort to slackers in respect of their obligations as members of society, so it is that a claim of dependency will meet defeat if it appear that

the claimant, by the expenditure of such efforts as under all circumstances ought fairly and reasonably to be expected of him, is of ability to be self and family supporting according to the proper measure of such support.

Turning now to the situation as disclosed by the Commissioner's finding, we learn that the claimant, at the time of his father's death, was a man grown, single, and past his majority. For the three months immediately prior to that event he had been working steadily at a living wage in a mechanical establishment, and was still so working when the hearing was had some eleven months later. He had previously worked intermittently. The finding supplies no details as to where, when, or how long continued, such previous employments were, or why they became terminated, save that he had attempted to work as a lineman, as his father was doing, and had given up that employment as not suited to his health and strength. The finding is barren of reasons why, as a full grown single man he could not reasonably have been expected to be self-supporting as readily as the ordinary man of his years, save that he was not physically strong or robust in appearance and had felt unequal, for reasons of health, to continuing the strenuous activities of a lineman.

It would seem that his fourteen months of continuous shop experience had furnished a fair degree of demonstration that he was not laboring under a serious physical handicap, and there is nothing in the finding to indicate that he was. Prior to his going to work where he is now employed, to wit, in the month of September preceding his father's death, he had periods of nonemployment, but whether these arose for other reasons than parental indulgence or disinclination to labor, we are not informed.

The Commissioner's memorandum of decision, made a part of the finding, contains, however, the suggestive statement that there was evidence that the claimant was unduly pampered by his father, and that possibly he was somewhat lacking in enterprise. This is followed by the Commissioner's dismissal of that phase of the case as possessing no present importance, and with the observation, in substance, that it was not his function as a trier to pass upon the proper standard of bringing up children and parental control and management, and that his duty was confined to accepting situations as he found them, whether or not they met his approval. Here is clearly disclosed the fundamental error into which the Commissioner fell in making his award. It is quite true that it is not for him in his official capacity to dictate to parents as to their methods of parental control and treatment, but it is for him, acting in that capacity, to deal with the results of such control in so far as they are disclosed in the conduct and inclinations of children grown to manhood and womanhood who assert claims to be treated as dependents. He is not to accept abnormal conditions not resulting in incapacity, simply for the reason that he finds them in existence, due though they be to parental indulgence and folly, and provide for their continuance at the expense of the parent's employer after he has gone. If parental pampering has induced disinclination to labor and fondness for a life free from personal effort, a Compensation Commissioner is not thereby called upon or justified in either continuing the work the parent has mistakenly begun, or in accepting the conditions as those existing and therefore to be maintained at the expense of an employer.

This may not be a case of the character just described, but the Commissioner was in error in dismissing, as he did, summarily and without inquiry, a

phase of it which the evidence naturally suggested to his mind, and we are unable to discover in the facts found by him, any justification for a conclusion that the claimant was a partial dependent, consistent with the application of a just and true standard.

This conclusion renders it unnecessary to consider the employer's remaining claim, that the Commissioner erred in his finding that the deceased's death was caused by injuries arising out of and in the course of his employment.

. There is error, the judgment of the Superior Court is set aside and the cause remanded to that court for the rendition of judgment vacating the award of the Compensation Commissioner. .

In this opinion RORABACK, BEACH and SHUMWAY, Js., concurred.

WHEELER, J. (dissenting). The reasons of appeal are in reality only two. First, that there is not sufficient evidence to sustain the finding and award based thereon, that the deceased died of an injury arising out of and in the course of his employment; and second, that there is not sufficient evidence that the deceased was a "partial dependent" within the meaning of our Compensation Act. The injury to the deceased, as found by the court, was the acceleration of a previously existing heart disease due to his employment. If the employment accelerates or aggravates a predisposing physical condition, the employment is the immediate occasion of the injury and it arises out of it. *Brightman's Case*, 220 Mass. 17, 107 N. E. 527; *Hartz* v. *Hartford Faience Co.*, 90 Conn. 539, 97 Atl. 1020; *Linnane* v. *Aetna Brewing Co.*, 91 Conn. 158, 99 Atl. 507. There was evidence from which the trial court might have made. this finding. We cannot determine from our

examination of the evidence that the findings of the Commissioner in the particulars involved were so unreasonable as to justify judicial interference, and to have required the Superior Court to have so held.

The second question likewise depends upon whether the trial court found the facts upon which its conclusion of partial dependency rests, and if so, whether its conclusion is correct. The question of dependency is one of fact, expressly made so by § 6 of Chapter 288 of the Public Acts of 1915. The finding of the fact of dependency will not be reviewed unless found without evidence, or contrary to the evidence, or in violation of law. *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 93 Atl. 245; *Kennerson* v. *Thames Towboat Co.*, 89 Conn. 367, 94 Atl. 372. None of the facts found, from which the conclusion of partial dependency was drawn, can be held to have been found without evidence, or contrary to the evidence. The question resolves itself to this: can the conclusion of partial dependency be legally drawn from the subordinate facts found?

The question of dependency is, whether the contributions were relied upon by the dependent for his means of living, judging this by the class and position in life of the dependent. *Powers* v. *Hotel Bond Co.*, 89 Conn. 143, 152, 93 Atl. 245; *Mahoney* v. *Gamble-Desmond Co.*, 90 Conn. 255, 96 Atl. 1025. The trial court has found that the claimant did rely for his means of living upon the contributions of his father during the periods when he was not working. The three months preceding the death of the deceased he was at work and received no assistance from the deceased, but in the four months preceding this he had been assisted for the greater part of two months, and generally the deceased assisted the claimant from time to time when he was out of work. We have already decided that partial dependency may exist, though contributions be at irregular intervals,

and in irregular amounts, and though the dependent have other means of support. *Powers* v. *Hotel Bond Co.*, *supra*. Under the authority of this decision the question of partial dependency was one of fact.

The defendant asserts that the receipt of support by the claimant when he did not work will not furnish a basis for a claim of partial dependency when he was working after September and at the time of the decease of Gherardi, unless the finding is to be read to mean that the claimant's period of idleness was due to his health. I do not think the finding is to be read in this way. Nor can it be assumed that these periods of idleness were wilful. A consideration of the evidence shows that the only evidence upon the subject was that of the claimant, and that the periods of idleness in September and June were spent in looking for a job. I think the finding of the Commissioner as to partial dependency was one of fact, and that he committed no error of law in making it.

We have reiterated our adherence to the test of dependency announced in *Powers* v. *Hotel Bond Co.* (*Blanton* v. *Wheeler & Howes Co.*, 91 Conn. 226, 231, 232, 99 Atl. 494), and other jurisdictions have cited this as the standard in Connecticut for ascertaining a "dependent" under the Act. The authorities generally adopt this test. The finding fully satisfies the conditions of fact upon which the test rests, and no question is made in the opinion as to the correctness of these findings and conclusions of fact. The majority opinion accepts this test, but adds "another important condition." It holds that dependency must be determined by looking at all the circumstances to discover what in fairness and right the conditions ought to be, and if the circumstances do not measure up to this standard dependency cannot exist. This test, I think, is too uncertain and variable to predicate a rule of law

Gherardi *v.* Connecticut Co.

upon. Perhaps for these and the like reasons we do not find that the many courts which have had the question of dependency before them since Compensation Acts were first enacted, have ever adopted this test, with the possible exception of Kansas. Applying its test the opinion holds that no one, not belonging to the enumerated statutory classes of dependents, can be a dependent who can support himself and family as befits his station in life by the exercise of such effort as he reasonably ought to make. In the application of this test, necessarily in each case the trier must ascertain all of the many family conditions, and then decide whether or not the alleged dependent ought or ought not to have been earning his living while he was receiving support from the injured. The same standard must apply to male and female,—and since "fairness and right" may decree that in many cases the female, and in some cases the male, should not be required to earn their living because of incapacity through disuse, or through failure to have become accustomed to such service, the courts must in each case decide when the claimant dependent shall work, what he shall work at and how much. This ruling will be apt to divide claimant dependents into classes, particularly women. Those women who have never been accustomed to work for a living and receive support will be held to be dependents, and those who have been accustomed to work for a living and don't, through receiving support, will be held to be nondependents. I regard such a rule of law as imposing upon courts a duty at once incapable of impartial and uniform adjudication, whose application might prove harmful and even dangerous to society. Each Commissioner will have his own standard of what is fair and right in each case. Some States have legislated upon this subject; this would have been wholly unnecessary if it had been thought that their

courts could adopt this test of dependency. This question was decided in accordance with the foregoing doctrine in *Blanton* v. *Wheeler & Howes Co.*, 91 Conn. 226, 232, 99 Atl. 494. Among the classes conclusively presumed by our Compensation Act to be wholly dependent, is (c) "any child under the age of eighteen years, or over said age but physically or mentally incapacitated from earning" etc. There was no occasion for this definition if "dependent" was intended in the Act to have the meaning the majority opinion gives it.

Turning to the facts of this case the opinion points out, and with accuracy, that although the claimant was supported by his father in the periods when he was not at work, the reason for his failure to work does not appear in the finding. The memorandum of decision of the Commissioner suggested that the claimant may have been unduly pampered by his father, and that possibly he was somewhat lacking in enterprise. The opinion recognizes that the finding is inadequate, as indeed it is, to differentiate this case as one of this character, for it says, "This may not be a case of the character just described." But since the Commissioner said in his memorandum: "It is not the function of the trier to pass upon the proper standard of bringing up children or the best parental methods of enforcing application and thrift in young men," but rather "to find the facts as they exist and apply the law to them whether he approves of the facts or not," the opinion holds that when these facts appear they must be considered in resolving the question of dependency; and it holds that the Commissioner was in error in failing to consider these facts in making up his award.

It disposes of this ground of error to point out that the issues raised by the reasons of appeal do not include this point. It is not before the court, and it is not among those exceptional considerations which will

sometimes justify the court in considering unassigned error upon appeal, although outside the scope of the appeal and the arguments of counsel. If the defendant had desired a finding upon the cause of the claimant's irregularity in work, it could have asked for it. Until in some authoritative way these facts were incorporated in the finding and the conclusion of dependency thus shown to be unfounded, it must stand. If we could examine the evidence we should find that the only evidence offered upon this point was to the effect that the irregularities in the claimant's work were due to his difficulty in securing a job although he made diligent effort. If the opinion is correct that the finding does not determine whether the irregularity in work of the claimant was due to his own disinclination to work and to the pampering of his father, or to other sufficient cause, and the Commissioner failed to consider this phase of the case which the evidence upon another hearing might show, it does not follow that there should be a reversal and a directed judgment, but rather a reversal and a new trial. Otherwise it may be that the cause will be decided upon a set of facts never found, and which a new trial would not establish.