26351. GLENS FALLS INDEMNITY CO. *et al. v.* JORDAN *et al.*

DECIDED SEPTEMBER 25, 1937.

*Bussey & Fulcher,* for plaintiffs in error.

*Hull, Barrett, Willingham & Towill, J. D. Gardner,* contra.

GUERRY, J. On January 27, 1936, Shelley Jordan Jr., while in the employment of the Lyle Construction Company, sustained injuries which arose out of and in the course of his employment, from which he died. Mr. and Mrs. Shelley Jordan Sr. made claim with the Department of Industrial Relations for compensation as "dependents" of the deceased, under the terms of the workmen's compensation act. The director before whom the hearing was had found as a fact that both claimants were partially dependent upon the deceased for support. The director's award was as follows: "C. M. Lyle Construction Company, employer, and Glens

Falls Indemnity Company, insurer, are directed to pay to Shelley J. Jordan Sr., for the use and benefit of himself and wife, Mrs. Shelley J. Jordan Sr., the sum of $2.55 per week, beginning as of February 24, 1936, to continue during dependency, not to exceed 300 weeks." Exceptions are taken to this award. It appears from the evidence most favorable to the claimants, that the deceased began working for the Lyle Construction Company about December 19, 1935. Before that time and for two years before December 5, 1935, the deceased was employed by the Bryan Construction · Company. In the interim, from about December 5, 1935, to December 19, he was not employed. Shelley Jordan Sr. testified that during the time the deceased was employed by the Bryan Construction Company he made regular substantial weekly contributions for the support of himself and Mrs. Jordan, and that these contributions were used to that end. He estimated that the average weekly contribution during that time was $6 per week. During the several weeks that the deceased was employed by the Lyle Construction Company before his injury, he did not make any contributions, but at the time of the accident he had saved up $40 or $50 from his wages for the witness. When he visited the deceased in the hospital after his injury, the deceased had given the doctor the amount saved up for him, but had $40, and told him to take that, which he did. During the time he was unemployed he was at home, and bought some groceries from the commissary. The witness was employed by the Attapulgus Clay Company as a tractor man; for a year or more immediately before the injury to the deceased he was employed merely by the hour; his average weekly wage was around $10; he had no other source of income, and his wife was not employed in any gainful occupation. Mrs. Shelley Jordan Sr. testified that the deceased did not make contributions to her directly; that he made them to his father, and in thus helping his father "that helped her;" and that she could not say that Mr. Jordan could have supported her without the help of her son. Mr. I. Bryan, owner and operator of the Bryan Construction Company, testified that the deceased, during the time he worked for Bryan, gave some of his wages to his father and mother. Bryan had seen deceased give his father money; and deceased often told him that he had given part of his wages to his father and mother. Bryan did not know the amount or amounts that deceased contributed.

The insurer introduced in evidence certain written statements of Mr. and Mrs. Jordan, made on March 6, 1936. The statement of Mr. Jordan is substantially as follows: "My name is Shelley James Jordan Sr. . . I am the father of Shelley James Jordan Jr., now deceased, and I work for Attapulgus Clay Company. Shelley Jr. was my only child. He was born on August 12, 1914. Shelley Jr. was not married and had not been married. Shelley Jr. began working for Lyle Construction Company on or about December 19, 1935, and worked for them continually until he was hurt. Since Shelley Jr. began working for Lyle Construction Company he has not sent me any money, except $40 after he was hurt. From about the middle of October, 1935, Shelley was at home and working for no one until about December 19, 1935, when he went with Lyle Construction Company. Prior to the middle of October, 1935, Shelley Jr. was with Bryan Construction Company. While he worked for Bryan on the Gray, Georgia, job he (Shelley Jr.) sent me $25 with which to pay my taxes. When I went to Augusta after Shelley Jr. was hurt, he gave me $40 then." On cross-examination Jordan admitted the truth of this statement, except that he was mistaken as to the date the deceased quit work for the Bryan Construction Company. The written statement of Mrs. Jordan was substantially as follows: "My name is Mrs. Shelley James Jordan Sr. . . my husband . . is living, and works for the Attapulgus Clay Company. I am the mother of Shelley James Jordan Jr., now deceased. He was our only child. He was born on August 12, 1914. Shelley Jr. had worked for Bryan Construction Company for about two years. This was not regular work, as he was in school, and he worked only during vacations until he finished school. Shelley Jr. finished at the Attapulgus high school in June, 1934. From this time on he worked regular as long as Bryan Construction Company had work for him to do. When he was not actually at work he was at home. Bryan Construction Company was the only concern he worked for, other than Lyle Construction Company. Some time about the middle of October, 1935, worked last for Bryan Construction Company. This was on a job at Gray, Georgia. After this Shelley Jr. was at home and not working for any one for about a month and a half till he accepted a position with Lyle Construction Company on a job near

Augusta, Ga. He first went to work for Lyle Construction Company about the middle of December, 1935. During the time Shelley Jr. was with the Lyle Construction Company he did not send any money home. After he was hurt, Mr. Jordan Sr. and I went to Augusta to be with him. Shelley Jr. was in the hospital when we got there. At this time Shelley Jr. gave his father $40. While with the Bryan Construction Company, Shelley Jr. sent some money home to his father. What money he sent was to his father for both of us. Occasionally, while with Bryan Construction Company, Shelley Jr. would give me some money but this was not at any regular times." On cross-examination Mrs. Jordan admitted the truth of this statement.

■ Counsel for the insurer contends that there is not sufficient evidence to support the finding of the director that the claimants were "dependents" of deceased. Our workmen's compensation act provides that certain of the next of kin of a deceased employee shall be conclusively presumed to be dependent upon the deceased. Neither of the claimants in the present case falls within that class. The act provides (Code, § 114-414), that "In all other cases, questions of dependency, in whole or in part, shall be determined in accordance with the facts at the time of the accident, . . and no compensation shall be allowed, unless the dependency existed for a period of three months or more prior to the accident." In *Maryland Casualty Co.* v. *Campbell,* 34 *Ga. App.* 311 (129 S. E. 447), the court said: "The question of dependency is one of fact, to be determined according to the facts and circumstances of each particular case, from the amounts, frequency, and continuity of actual contributions of cash or supplies, the needs of the claimant, and the legal or moral obligation of the employee." In 1 Honnold on Workmen's Compensation, 224, it is said: "Compensation acts are founded on the theory of compensation [*Maryland Casualty Co.* v. *Bartlett,* 37 *Ga. App.* 777 (142 S. E. 189); Moll *v.* City Bakery, 199 Mich. 670 (165 N. W. 649); Engberg *v.* Victoria Copper Mining Co., 201 Mich. 570 (167 N. W. 840); and compare 71 C. J. 529, § 272], not only to the injured workmen, but to his dependents in case of death. While ordinarily no exact standard for the determination of dependency is prescribed by statute, and it is difficult, if not impossible, to formulate such a standard, it may be said in general terms that a 'dependent' is one

who looks to another for support, one dependent on another for the ordinary necessities of life, for a person of his class and position; and that, to be entitled to compensation as a dependent, one need not deprive himself of the ordinary necessities of life to which he has been accustomed. . . It follows that dependency does not depend on whether the alleged dependents could support themselves without decedent's earnings, or so reduce their expenses that they would be supported independent of his earnings, but on whether they were in fact supported in whole or in part by such earnings, under circumstances indicating an intent on the part of the deceased to furnish such support." In 2 Schneider on Workmen's Compensation Laws, 1194, § 367, it is said: "No exact standard for the determination of dependency is prescribed by statute, and it is difficult, if not impossible, to frame a definition which will include the varying conditions under which dependency may exist. . . Dependency being a question of fact, at least until the facts are found, and the facts as varied as the number of cases, each case must be decided on its own facts. The first question to be determined is whether or not the claimant suffered loss in respect to his or her support or maintenance. This being found in the affirmative, it is then necessary to determine whether or not the claimant was entitled, legally or morally, to consider the contributions received from deceased as a part of his or her necessary livelihood; that is, whether such contributions formed a part of the sort of support to which the claimant, within considerable radius of reason, was entitled. While no exact standard of living can be fixed to a certainty for any given class, still some standard is necessary. . . In establishing a standard of living as a test, it is necessary to give it considerable elasticity; and this was probably the intention of the legislatures of the various States when they placed such questions within the discretion of the boards and commissions for determination."

Another fine discussion of the meaning of the term "dependent" as used in the workmen's compensation act is found in Re Carroll, 65 Ind. App. 146 (116 N. E. 844). The court there said: "Our act does not define dependency, and does not specifically indicate who are dependents, except as to persons included within the conclusive presumption of total dependency features of the act. Courts, as a rule, in determining questions of dependency,

and who are dependents, resort to description, rather than to definition. Stated generally, a dependent is one who looks to another for support and maintenance; one who is in fact dependent —one who relies on another for the reasonable necessities of life. Jackson v. Erie R. Co. (1914), 86 N. J. L. 550, 91 Atl. 1035, 6 N. C. C. A. 944; Tirre v. Bush Terminal Co. (1916), 172 App. Div. 386, 158 N. Y. S. 883, 12 N. C. C. A. 64. To confine the inquiry to the question whether the family of the deceased workman could have supported life without any contribution from him, or whether such contributions were absolutely necessary in order that the family might be reasonably maintained, is not a fair test of dependency; but rather the inquiry should include the question whether contributions from the workman were looked to, or depended and relied on, in whole or in part, by the family for means of reasonable support. Howells v. Vivian (1877), 85 L. T. N. S. (Eng.) ; Powers v. Hotel Bond Co. (1914), 89 Conn. 143, 93 Atl. 245. Among the elements that are indicia of a state of dependency are an obligation to support, the fact that contributions have been made to that end, that the claimant in any case is shown to have relied on such contributions and their continuing, and the existence of some reasonable grounds as a basis for a probability of their continuance, or of a renewal thereof, if interrupted. We would not be understood as indicating that all these elements must exist in each case, in order that there may be a state of dependency. As a rule to which there are exceptions, however, the fact that contributions have been made is an essential element of a state of dependency." See also Rock Island Bridge &c. Works v. Ind. Com., 287 Ill. 648 (122 N. E. 830) ; Alden Coal Co. v. Ind. Com., 293 Ill. 597 (127 N. E. 641) ; Richardson Sand Co. v. Ind. Com., 296 Ill. 335 (129 N. E. 721) ; Muzik v. Erie R. Co., 85 N. J. L. 129 (89 Atl. 248) ; Jackson v. Erie R. Co., 86 N. J. L. 550 (91 Atl. 1035) ; Carter's case, 221 Mass. 105 (108 N. E. 911) ; Kostamo v. H. G. Christman Co., 214 Mich. 652 (183 N. W. 902) ; Rasin v. Miami Coal Co., 79 Ind. App. 123 (137 N. E. 529) ; Texas Employers Ins. Asso. v. Peterson (Tex. Civ. App.), 251 S. W. 572; Gonzales v. Chino Copper Co., 29 N. M. 228 (222 Pac. 903) ; Clover Fork Coal Co. v. Ayres, 219 Ky. 326 (292 S. W. 803). Our workmen's compensation act, as does all other workmen's compensation acts that we have examined,

provides for compensation for partial dependency as well as for total dependency. In order to establish a partial dependency it is not necessary for the claimant to prove that he had no other income. It is quite true that dependency does not arise upon mere proof that contributions have been made. Gherardi v. Conn. Co., 92 Conn. 454 (103 Atl. 668). It must be shown that the contributions were made and relied upon by the claimant or claimants for their support, according to their needs, judged by the class and position in life of the recipient. Dazy v. Apponaug Co., 36 R. I. 81 (89 Atl. 160); Henry Pratt Co. v. Ind. Com., 293 Ill. 367 (127 N. E. 754); Kenney's case, 222 Mass. 401 (111 N. E. 47); Poccardi v. St. Comp. Com., 79 W. Va. 684 (91 S. E. 663); Rhyner v. Hueber Blg. Co., 171 App. Div. 56 (156 N. Y. S. 903). However, it is equally true that the fact that the claimant earns enough to barely sustain life does not negative dependency. "Can we say that it was the intention of the legislature, and that by the act in question it has been said to all parents who have been so unfortunate as to lose a son by accidental death arising out of and in the course of his employment, who has been regularly employed and who has given all or a substantial part of his earnings to his father, who has used the same in maintaining the family in a condition suited to their condition and station in life, that they must forego all things that are not absolutely necessary, and that, if the earnings of the father are sufficient to procure sufficient bread to sustain life, and clothing sufficient to cover their bodies, they can not claim compensation as dependents, on account of the loss of the earnings of said son?" Re Stewart (1920), 72 Ind. App. 463 (126 N. E. 42). The answer is apparent.

In the present case the director was amply authorized to find both claimants in a state of dependency, and that they were dependent upon the deceased. That the son did make contributions to them for a considerable period of time before his death is well established by the claimants' testimony, supported by that of another disinterested witness. The father's income was meager and uncertain. The mother had no income. The father's average weekly earning was $10; and it is a matter of common knowledge that this amount is far below the average income of American labor, and it could hardly be said that in these modern times this was sufficient to maintain them according to their needs, position,

and station in life, regardless of what that might be. The father testified that the contributions made by deceased were used to support himself and wife, for times were hard with them. It may be possible that he could, by foregoing all other things, have bought enough food for himself and his wife to withstand the pangs of hunger, and could have provided sufficient clothes to prevent nakedness; but, as we have shown, this does not negative dependency. It is true that our workmen's compensation act provides that dependency must have existed three months prior to the injury, and that in this case it is true that for two weeks during the three months preceding the injury, when the deceased was unemployed, and for the four or five weeks during that same period when he was employed by the Lyle Construction Company, he did not actually make contributions to the claimants. However, partial dependency may be established though the contributions be at irregular intervals and of irregular amounts. Miller's Indemnity Underwriters v. Green (Tex. Civ. App.), 237 S. W. 979. "Neither the amounts contributed nor the times when made are necessarily controlling elements in the test of dependency." Hancock v. Ind. Com., 58 Utah, 192 (198 Pac. 169); Southern Surety Co. v. Hibbs (Tex. Civ. App.), 221 S. W. 303. It is not necessary, in order to satisfy the provision of the act that dependency must have existed three months prior to the accident, that it be shown that contributions were actually made during that period, or at the time of the accident, where it appears that for a considerable period prior thereto contributions had been made and received by claimants and used to support them according to a standard authorized by their position in life, and there be reasonable grounds for the belief that the contributions would have been continued, although in an irregular amount and at irregular intervals, and that the lapse in contributions was not brought about by an intention of the deceased employee to refuse further aid. It affirmatively appears that during the time the deceased was employed by the Lyle Construction Company he recognized the necessity of making contributions to help support his mother and father, and that during that time he saved money (about $40 or $50) which he had intended to give them when he came home. Certainly there was a reasonable probability that he would have continued to make contributions to them had he lived. To argue

that the mother was not dependent on the deceased, because she was dependent on her husband, is taking too narrow a view of the provisions of the workmen's compensation act. True, she was not totally dependent on the deceased, but only partially dependent. However, the deceased was morally obligated to provide sufficient funds to enable her to live as her station in life authorized, and had a right to do so, and the mother certainly had the right to consider it as being for such support. Legally speaking, Mrs. Jordan could only demand support from her husband, but this does not prevent dependency upon her son, *as a fact*. The contributions were made for her support as well as the father's; and it makes no material difference, if they were so applied, that they were given to the father for them both.

The insurer contends that when we consider the written statements of the claimants, which they admitted to be true, their testimony is so self-contradictory, vague, and equivocal that we should not allow them to recover the compensation, under the rulings in *Southern Ry. Co.* v. *Hobbs,* 121 *Ga.* 428 (49 S. E. 294), and *Turnmire* v. *Higgins,* 176 *Ga.* 368 (168 S. E. 5). To this we can not agree. When their testimony, including the written statements is considered as a whole, it is not so self-contradictory, vague, and equivocal, as to require a finding against their right of recovery. It is true that there is some uncertainty as to when the deceased ceased work for the Bryan Construction Company. However, not only did Mr. Jordan state that his statement was wrong as to the date, but Mr. Bryan positively testified that the deceased quit work for him on December 5. It is well settled that the principle decided in the above cases does not apply where the plaintiff introduces other witnesses to establish facts necessary for a recovery. Moreover, as we have pointed out, even if we concede that the deceased quit work for Bryan Construction Company in October, and therefore that he did not, for three months immediately preceding his injury and death, make any contributions to claimants, we do not think, under the facts of this case, that it would require a finding that the claimants were not partial dependents for three months preceding the accident. Concerning contributions, the statement of Mrs. Jordan introduced in evidence was that "while with the Bryan Construction Company Shelley Jr. sent some money home to his father. What money

458

he sent was to his father for both of us. Occasionally, while with the Bryan Construction Company, Shelley Jr. would give me some money, but this was not any regular time." This is certainly consistent with her testimony at the hearing. Counsel would have us hold, as if we were a jury, that that part of Mr. Jordan's statement that "while he worked for Bryan on the Gray, Georgia, job he [Shelley Jr.] sent me $25 with which to pay my taxes," is contradictory of his statement upon the trial that the deceased contributed an average of $6 per week while employed by Bryan Construction Company *to the support* of himself and Mrs. Jordan. We can not so say, for several reasons. We would have to assume that for the two years while he was working for Bryan Construction Company it was on the Gray, Georgia, job, and that this statement was made in answer to a question as to how much money deceased contributed to him while employed by Bryan Construction Company. Certainly we would not be authorized to do so. That deceased gave him $25 with which to pay his taxes is not inconsistent with his testimony that he contributed $6 per week to his support. The findings of the director were authorized by the evidence; and in such instance, in the absence of fraud, they are binding upon this court.

■ The insurer complains that the award of the director to Mr. Jordan for the joint use of himself and Mrs. Jordan is illegal; that under the terms of the workmen's compensation act, it should have been "divided among them according to the relative extent of their dependency" (Code, § 114-414). Under the provisions of the workmen's compensation act, to determine the amount of death benefit payable to a deceased employee's dependents, where there is no one wholly dependent upon him for support, the amount contributed by the deceased is the determining factor, and not the number of dependents. For instance, in the present case the deceased contributed an average of $6 per week to his mother and father. His average weekly wage was $20. One wholly dependent upon him for support would be entitled to $10 per week. If only partial dependents survive him, the death benefit would be 85 per cent. of $10, or $8.50 x 3/10, or $2.55 per week. Thus the insurer is liable to pay out, because of the death of the employee and the existence of persons partially dependent, $2.55 per week, whether there be one dependent or more than one. As we

have already pointed out, the evidence clearly authorized a finding that Mr. and Mrs. Jordan were partial dependents of the deceased. However, it does not show the relative extent of their dependency; and the difficulty, if not impossibility, of so determining in a case of this character is apparent, unless we say arbitrarily that it is 1/2 and 1/2. It is true that the act provides that "if there is no one wholly dependent, and more than one person partially dependent, the death benefit shall be divided among them according to the relative extent of their dependency." However, we can not construe this provision to mean that there must be an actual division of the death benefit by making separate awards to each person partially dependent upon the deceased in every case, by determining the relative extent of their dependency. The impossibility of so doing in a case of this character is obvious; and certainly it was not the intent of the legislature that the division be arbitrary, and, if not, it certainly was not their intention that if it could not be determined by evidence, that the award should fail. The award is not illegal. See *Maryland Casualty Co.* v. *Bartlett*, 37 *Ga. App.* 777 (142 S. E. 189). This provision of the act is merely for the benefit and protection of those partially dependent. It is nothing more than a safeguard to see that each dependent receives his or her just share of the compensation. Where the contributions have been made by the deceased employee to his mother and father as a family group, and the award is made to the father for the use and benefit of them both, and there is no objection to the award on the part of the mother, we can not see that the insurer is injured, or the intention of the act is violated, by a failure to actually divide the death benefit by making two awards, one in favor of each, in an amount to be determined by the relative extent of their dependency. If the compensation is so applied as provided in the award (and it is to be presumed that it will be), then there is no reason for complaint by the insurer. If evidence should be brought before the department that Mrs. Jordan was not receiving her just support from the amount awarded, then the award could and should be amended to effectuate the purposes and intent of the act. The insurer is protected from further liability by this award; and if the circumstances under which the award is made should hereafter change, such as the death of the father, then the award should be amended,

if necessary under the provisions of the act, and an award be made to the mother in the amount to which she alone is entitled under the provisions of the act. Whether she would be entitled to the full amount of the death benefit, or only a part thereof in a case of this character, is not now before this court for determination. The judge of the superior court did not err in affirming the award of the director of the Department of Industrial Relations.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*