34541. ST. PAUL-MERCURY INDEMNITY CO. *et al.* *v.* ROBINSON, by guardian.

DECIDED MAY 2, 1953—REHEARING DENIED MAY 14, 1953.

*Fulcher, Fulcher & Hagler,* for plaintiffs in error.
*Bell & Bell,* contra.

SUTTON, C. J. Rubin Simmons sustained an injury arising out of and in the course of his employment by Rutland Contracting Company, and as a result of this injury, he died on May 3, 1952. His average weekly wage was in excess of $48. His employer and its insurance carrier requested a hearing before the Workmen's Compensation Board to determine the person to whom the death benefits provided by law should be paid. The above-stated facts were admitted at the hearing.

The director who heard the case found the following facts: Rubin Simmons and Carrie Bell Simmons were married in 1940 and lived together from that time until his death. They had no children of this marriage. Carrie Bell Simmons admitted that she had married one Tom Harris before she married Rubin Simmons, and that, so far as she knew, this first marriage was undissolved. Carrie Bell Simmons had an illegitimate child, whom she named Carrie Bell. Neither Rubin Simmons nor Tom Harris was the father of Carrie Bell. On November 16,

1948, Carrie Bell gave birth to an illegitimate child, whom she named Linda Robinson.

Carrie Bell Simmons and Rubin Simmons kept Linda Robinson from the time of her birth, and Rubin Simmons supported her and accepted her as his own child. Linda Robinson was living with Carrie Bell Simmons at the time of the hearing. The plaintiffs in error concede that these findings of fact were supported by uncontroverted testimony.

Based upon these facts, the director found that Linda Robinson was totally dependent upon Rubin Simmons, and he made an award of death benefits for her use, appointing Carrie Bell Simmons as her guardian. See Code (Ann. Supp.) § 114-421 (Ga. L. 1952, pp. 271, 272).

The contention of the plaintiffs in error is that the findings of fact do not support the award, because Linda Robinson was not related to Rubin Simmons, and therefore he was under no legal or moral obligation to support her; and because Carrie Bell Simmons, not being the lawful widow of Rubin Simmons, and not otherwise related to him, is not entitled to compensation death benefits even though she was totally dependent upon him, and hence, a fortiori, the illegitimate daughter of Carrie Bell Simmons' illegitimate daughter is not entitled to such death benefits.

Code § 114-414 provides that the husband, wife, or child of a deceased employee "shall be conclusively presumed to be the next of kin wholly dependent for support upon the deceased employee," and further provides: "In all other cases, questions of dependency, in whole or in part, shall be determined in accordance with the facts at the time of the accident." Linda Robinson, to whom the board awarded compensation for the death of Rubin Simmons, does not come within the class of persons conclusively presumed to be wholly dependent upon, nor is she related to, Rubin Simmons, the deceased employee.

But under the latter provision of this section, "The question of dependency is one of fact, to be determined according to the facts and circumstances of each particular case, from the amounts, frequency, and continuity of actual contributions of cash or supplies, the needs of the claimant, and the legal or moral obligation of the employee." *Maryland Casualty Co.* v.

*Campbell,* 34 *Ga. App.* 311 (129 S. E. 447). It was held in that case that continued contribution of cash or supplies is evidence of dependency, but not an essential thereof. A legal obligation of the deceased employee to support the claimant is not necessary to show the claimant's dependency. *Glens Falls Indemnity Co.* v. *Jordan,* 56 *Ga. App.* 449, 457 (193 S. E. 96). And even a moral obligation to support is not an essential element of dependency; for in *Bituminous Casualty Corp.* v. *Williams,* 80 *Ga. App.* 337 (56 S. E. 2d 157), it was held that the evidence authorized the board's finding that a first cousin of the deceased employee was totally dependent upon him at the time of his death, and the award to such a dependent was affirmed. We know of no moral obligation to support a first cousin, such as there may be to support a parent, according to *Glens Falls Indemnity Co.* v. *Jordan,* supra.

The policy of the Workmen's Compensation Act, with respect to the payment of death benefits, is to provide a measure of compensation to persons suffering a direct loss of support because of the death of an employee as a result of his employment. That few employees provide support for persons not related to them is no reason to limit the policy of the act by restricting the class of persons who may be shown to have been dependent upon a deceased employee to those related to him. Where, as in the present case, and according to Code § 114-414, "the dependency existed for a period of three months or more prior to the accident," it seems that Linda Robinson had a reasonable expectation of the continuance of such support in the future, if Rubin Simmons had lived; and, as it was found that the four-year-old child had been cared for and supported by the deceased employee since the time of her birth, she undoubtedly was reliant upon such support. Rubin Simmons and Carrie Bell Simmons had lived together for almost twelve years with no children born to them. Under these circumstances, and inasmuch as Linda Robinson's actual dependency is virtually conceded by the plaintiffs in error, the facts as found by the director supported the award.

In a case where it did not appear that the claimant was related to the deceased employee, and under a statute containing provisions almost identical with ours, it was held in Virginia

Electric & Power Co. *v.* Place, 150 Va. 562 (143 S. E. 756): "From what has been said it follows that we are of the opinion that the second class of cases created by the statute ["In all other cases," etc.] rests neither upon relationship nor presumption, but wholly upon the facts as they exist at the time of the death of the employee." Other rulings to the same effect, but under workmen's compensation acts with terms different from ours, were made in Memphis Fertilizer Co. *v.* Small, 160 Tenn. 235 (22 S. W. 2d 1037); Russell *v.* Johnson, 220 Ind. 649 (46 N. E. 2d 219), and L. E. Myers Co. *v.* Noland, 222 Ky. 748 (2 S. W. 2d 387); also see Annotation, 154 A. L. R. 698.

The plaintiffs in error rely upon *Richardson* v. *Brown,* decided with *Brown* v. *Sheridan,* 83 *Ga. App.* 725 (64 S. E. 2d 636), in which the board's denial of death benefits to the daughter of the woman with whom the deceased employee was living under a void marriage was affirmed. It was there contended that the claimant fell within the class conclusively presumed to be wholly dependent, as a stepdaughter of the deceased employee, but when the mother's marriage to the employee was found to be invalid, the claimant was no longer his stepdaughter. The question of actual dependency was not considered, although the record shows that the director found that the custody of the claimant had been awarded to her maternal grandmother, prior to the employee's death. This case does not stand as authority for a ruling that kinship is a requisite of dependency.

As to the contention that Linda Robinson was not entitled to receive compensation because her grandmother, Carrie Bell Simmons, may not have been entitled to claim compensation as a dependent of Rubin Simmons due to her bigamous relationship with him, we need only to state that, even if her conduct, being against public policy, was a bar to her claim, it does not follow that her illegitimate granddaughter, Linda Robinson, would also be barred from showing her actual dependence upon Rubin Simmons, for she was not a party to such illegal conduct.

The superior court did not err in affirming the award of the Board of Workmen's Compensation, as it was supported by the findings of fact.

*Judgment affirmed. Felton and Worrill, JJ., concur.*