## James E. McMahon's (dependent's) Case.

Suffolk.　November 12, 1917. — January 2, 1918.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Workmen's Compensation Act*, Dependency, Amount of compensation.

In a claim under the workmen's compensation act by the father of a deceased injured employee alleged to have been partly dependent upon his deceased son for support, it appeared that the employee was twenty-two years of age and unmarried, that he always had lived with his parents and was the oldest of six children, of whom he and his oldest sister were the only ones who worked, that his father and mother were hardworking and saving people owning some equity in the homestead and in another house, that he worked for a street railway company and previously had worked in a department store and that in both occupations he offered his mother all his earnings for the family purse, but that she took only $5 a week, that during the last years of his life, in addition to his regular employment, he worked on the cellar of a new addition to the house, cleaned up the yard and cellar, repaired the place for the hens, fixed up things in the barn, took out the ashes and carried up all the coal and wood and occasionally, when his father was not at home, milked the cow, that he also worked at times in a cemetery, of which his father was the superintendent, and the money that he earned in this way "was turned into the house," that he seldom came home without bringing something to some one in the family, including fruit and wearing apparel, from the value of from $1 to $1.50 a week, and that under these circumstances he paid $27 for the purchase of certain articles of furniture for the household. *Held*, that on these facts the Industrial Accident Board were warranted in finding that the father was partly dependent upon the earnings of his deceased son for support.

In the claim above described it appeared, in addition to the facts stated above, that the deceased employee left at his death certain saving bank deposits, including savings amounting to $288.87 which he intended to devote in accordance with a promise to his mother toward the payment of the cost of a contemplated addition to the family house. There was nothing in the bank books nor in the hands of the father to identify the money as having been saved for the performance of this unexecuted intention. The Industrial Accident Board, in computing under St. 1911, c. 751, Part II, § 6, the amount which the father should receive as the next of kin partly dependent upon the earnings of the deceased employee for support, included this amount of $288.87 saved by the son to devote to the improvement of the family house as part of the amount contributed by the employee to such partial dependent. *Held*, that the inclusion of this amount was erroneous, because the deposits in the savings banks remained entirely in the legal possession and control of the employee and he could do what he pleased with the money, and a finding that it was contributed by him to his father was not warranted.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the

Industrial Accident Board awarding compensation to Francis J. McMahon as the next of kin of James E. McMahon, late of Salem, dependent upon his earnings for support at the time of the injury that caused his death when he was in the employ of the Bay State Street Railway Company.

The case was heard by *Fox*, J. The evidence reported is described in the opinion. The following extracts are taken from the report of the arbitration committee:

"When the employee died, he had money in the Salem Five Cents Savings Bank, the Warren Savings Bank of Peabody, the Salem Savings Bank and the Salem Co-operative Bank, to the amount of $338." The father testified that, as far as he knew, "the money which James had in the bank when he died belonged to him."

"That the payment to his mother of $27 with which to buy a bed and bureau and the saving by the employee of the sum of $288.87 toward the keeping of his agreement with his mother to pay for certain alterations which were being made upon the family home were in fact contributions toward the support of the mother, who was the custodian of the family fund and who disbursed the fund for the benefit of its members.

"That the total contribution of the employee to the support of his mother was $315.87.

"That the annual earnings of the deceased employee during the year preceding his death were $818.52.

"That the amount due a person wholly dependent, therefore, would be $10, or the maximum weekly payment under the statute.

"That the amount due the partial dependent is 315.87/818.52 of $10 each week for a period of five hundred weeks from the date of the injury; that is $3.86 per week for the statutory period."

The judge made a decree, in accordance with the decision of the Industrial Accident Board, that there be paid to Francis J. McMahon, administrator of the estate of James E. McMahon, a weekly payment of $3.86 for a period of five hundred weeks from August 6, 1916, the date of the injury. The insurer appealed.

*J. W. Cronin,* for the insurer.

*W. B. Sullivan,* (*D. F. O'Rourke* with him,) for the administrator of the estate of the deceased employee.

DE COURCY, J. The deceased employee, James E. McMahon, on August 6, 1916, sustained fatal injuries arising out of and in the

course of his employment. The Industrial Accident Board found that the father, Francis J. McMahon, was partially dependent for support upon the decedent, within the meaning of Part II, §§ 6, 7, of the workmen's compensation act. The contributions for the support of the father, on which this finding was based, were two: the giving by James of $27 for the purchase of certain articles of furniture and the alleged saving by him of the sum of $288.87 toward the payment of the cost of certain alterations in the house "which the employee had contracted to make." We cannot consider in this connection the payment of board by the decedent nor the purchase by him of various articles of clothing and fruit and his gifts of money for car fares, because the board has found that these were not contributions to the support of the family and the claimant has not appealed from that decision. See *Gove's Case*, 223 Mass. 187, 194.

1. As to the father's dependency. "Dependents" are defined in Part V, § 2, of the statute as "members of the employee's family or next of kin who were wholly or partly dependent upon the earnings of the employee for support at the time of the injury." The finding of the board that the father, Francis J. McMahon, was partially dependent for support upon his son James E., must stand if there was any evidence to warrant that finding. *Diaz's Case*, 217 Mass. 36. The contribution of $27, even though given for the purchase of certain articles of household furniture, could be adjudged a contribution to the "support" of his father. And while dependency implies that the father relied on this son for support or help to a substantial degree, partial dependency within the meaning of the statute may be found to exist even though the father could have subsisted without any aid from his son and the son was under no legal obligation to furnish it. *Kenney's Case*, 222 Mass. 401. In determining whether this present of $27 was evidence of partial dependency, the contribution must be considered in the light of the other facts before the board. The deceased was twenty-two years old, unmarried, and always had lived with his parents. He was the oldest of six children, none of whom worked except him and his oldest sister, Mary. The father and mother were hard working and saving people, with some equity in the homestead and in another house. James went to work for the street railway about the time he reached his majority, and before

that he worked in a department store.  In both occupations it
appears that he offered to his mother (who held the family purse)
all his earnings, but she took only $5 per week.  During the last
years of his life, in addition to his regular employment, "he
worked on the cellar of the new addition, cleaned up the yard
and cellar, fixed over the place for the hens, fixed up things in the
barn, took out the ashes and carried up all the coal and wood.
He milked the cow occasionally when his father was not home."
He also worked at times in the cemetery, of which his father was
superintendent, and the money he earned "was turned into the
house. . . . He very seldom came home without bringing some-
thing to some one in the family," including fruit, wearing apparel,
etc., to the value of $1 to $1.50 a week.  When the payment of
$27 for furniture is viewed in this setting, we cannot say as matter
of law that the board could not find it to be a contribution made
by a son to a father who looked to that son for support and help.
In other words, it cannot be ruled that the finding of a condition
of partial dependency was unsupported by evidence.  *Murphy's
Case*, 218 Mass. 278.  *Gove's Case, supra.*  The other contribution
on which the board based its decision will be considered under
the next heading.

2. The existence of partial dependency on the part of the father
having been established, the further question arises as to the
amount to be paid to the dependent.  The specific provision of
our statute, Part II, § 6, as amended by St. 1914, c. 708, § 2, is as
follows: "If death results from the injury, the association shall
pay the dependents of the employee, wholly dependent upon his
earnings for support at the time of injury, a weekly payment
equal to sixty-six and two thirds per cent of his average weekly
wages, but not more than ten dollars nor less than four dollars
a week for a period of five hundred weeks from the date of the
injury; but in no case shall the amount be more than four thousand
dollars.  If the employee leaves dependents only partially depend-
ent upon his earnings for support at the time of his injury, the
association shall pay such dependents a weekly compensation
equal to the same proportion of the weekly payments for the
benefit of persons wholly dependent as the amount contributed
by the employee to such partial dependents bears to the annual
earnings of the deceased at the time of his injury."  It is agreed

that the employee earned $818.52 during the last year of his life. To a person wholly dependent there would be due a weekly payment of $10, or the maximum amount under the statute. The father in this case is entitled to such proportionate part of $10 a week as the amounts received by him from James bear to said annual earnings of James.

The only undetermined element in this problem is the amount which James contributed to his father during the year. In addition to the payment of $27 already referred to, the board found that "the saving of the sum of $288.87 toward the payment of the cost of certain alterations on [the family] home, which the employee had contracted to make," was a contribution to the support of the dependent. As to this item, the evidence would warrant a finding that James made an oral agreement with a carpenter for certain alterations in his father's house, for $1,200; and that before the death of James the carpenter had put $205.05 into the house in stock and labor. But no payment ever was made by the decedent on the contract. At the time of his death he had money deposited in four banks, amounting in all to $338. Apparently the board adopted the finding of the arbitration committee that the deceased was saving $288.87 of this wherewith to pay for the alterations, in accordance with a promise made to his mother. But, even if we assume that this sum came from the wages of the deceased and was earned during the year preceding his injury, the money remained entirely in his legal possession and control and he could do with it what he pleased. There was nothing on the bank books nor in the father's possession to even identify the money as being saved for the performance of this unexecuted intention. In our opinion the board was not legally warranted in finding that $288.87 of the moneys deposited in the banks was an "amount contributed" by him to his father, and it cannot be included in determining the amount payable to the dependent under § 6.

The result is that on this record the dependent is entitled to 27/818.52 (instead of 315.87/818.52) of $10 each week for five hundred weeks from the date of the injury. The decree appealed from must be reversed, and a decree entered in accordance with this opinion.

*So ordered.*