## In Re Stewart.

[No. 10,751. Filed February 3, 1920.]

1. MASTER AND SERVANT.—*Workmen's Compensation.—Dependency.*
   —*Standard.—Construction.*—The Workmen's Compensation Act
   gives no definite standard of dependency, but the act being
   grounded in justice and economically sound, is construed liberally
   to accomplish the ends for which it was enacted. p. 467.

2. MASTER AND SERVANT.—*Workmen's Compensation.—Death of
   Minor.—Dependency of Parents.*—If the earnings and income
   of the father were sufficient to support the family in a manner
   suitable to their condition and station in life, there could be
   no legal dependence under the Workmen's Compensation Act
   upon the minor son who lost his life, although there may have
   been an actual dependence upon contributions from his wages,
   and an actual reliance thereupon by his parents to help support
   the family. p. 469.

3. MASTER AND SERVANT.—*Workmen's Compensation.—Death of
   Minor Child.—Dependency.—Burden of Proof.*—In a proceeding
   under the Workmen's Compensation Act for the death of a
   minor child, the burden of proof of legal dependency is upon
   the parent. p. 469.

4. MASTER AND SERVANT.—*Workmen's Compensation.—Certified Questions.—Statement of Facts.—Silence as to Material Fact Concerning Dependency.—Effect.*—When the statement of facts accompanying questions of law relative to dependency, certified by the Industrial Board to the Appellate Court for answer, is silent as to the amount of money reasonably necessary to support and maintain in a condition and manner suitable to their condition and station in life, the family, consisting of father, mother, brother and sisters, of a minor, killed in the course of employment, such questions must be answered in the negative. p. 469.

From the Industrial Board of Indiana.

Proceedings under the Workmen's Compensation Act in the matter of Harold Stewart. Certified questions of law by the Industrial Board. *Questions Answered.*

ENLOE, J.—The Industrial Board of Indiana, under the provisions of §61 of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1918), has certified to us the following questions, based upon the following facts, to wit:

"On the 29th day of July, 1919, one Harold Stewart began work for the Hoosier Veneer Co. at a stipulated weekly wage of $16.50; that he continued in said employment until August 6th, 1919, at two o'clock p. m., at which time he received a personal injury by an accident arising out of and in the course of his employment, which resulted in his death on said date; that the Hoosier Veneer Company had actual knowledge of the injury and death at the time of the occurrence; that the said Harold Stewart at the time of his injury, and at all times prior thereto during his lifetime, lived with his father, his mother, his brother and his sisters as a member of the family; that he had never worked for wages until in July, 1919; that during that month he spent three weeks in the country in the employment of an uncle in harvesting and for his services received the sum of

$27.25; that upon his return from the country to his home he gave $17.25 of his earnings to his father, who used the same in making a payment upon a used automobile which he had previously purchased. He gave $10.00 of said amount to his mother, who used it for the family expenses; that after returning from the country and before beginning work at the Hoosier Veneer Company, the said Harold Stewart and his mother had discussed the question of his taking employment and earning wages with which to procure clothes and books for the purpose of attending school and aiding in the support of the family; that after such discussion he did enter the employment of the Hoosier Veneer Co. as hereinbefore stated; that on the Saturday previous to his death he had drawn wages amounting to $11.13, all of which he had given to his mother and which was used by her for family expenses; that there was $9.60 of his wages due at the time of his death and this amount was afterward paid to his father; that Harold Stewart was 16 years and 24 days old at the time of his death; that his mother owned a residence property in which the family lived, worth from $1,200 to $1,500; that she also owned two vacant lots which she had bought on payment and upon which only $50 had been paid.

"A few months prior to Harold's death the father had bought a used automobile for which he had obligated himself to pay the sum of $495.00 and this was being paid in installments; that for more than ten years prior to the death of Harold the father had been engaged in the huckster business. In the conduct of this business the father bought groceries and other articles of merchandise, hauled them to the country and sold or exchanged them for produce, such as butter, eggs and chickens, hauled this produce back

to the city of Indianapolis, sold some of it at whole-sale and a large portion of it at retail, which was delivered to his customers living in the city of Indianapolis. That for more than five years prior to the death of Harold he had assisted his father, when not in school, in making the delivery of such produce to his father's retail customers. That during all of said time the father appropriated such services of Harold Stewart and paid no wages therefor; that said services were rendered simply as a member of the father's family; that in his huckster business the father earned from $15.00 to $20.00 a week; that out of said income the family was supported; that the family of John Stewart, at the time of the death of Harold, consisted of himself, who was then fifty-five years of age, his wife, forty-five years of age, and two daughters, one nineteen years of age and the other ten years of age, who with the son Harold Stewart constituted the entire family and all of whom lived together as such; that another son, William, had been married for more than three years prior to the death of Harold Stewart and at said time was living with his wife and entirely separate and apart from the family of John Stewart.

"Upon the foregoing facts the Industrial Board respectfully submits the following questions of law for determination: (1) Would a finding that the father and mother, or either of them, were dependents of Harold Stewart be sustained by sufficient evidence? (2) Would such finding be according to law? (3) Upon the foregoing facts would an award that the parents of Harold Stewart, or either of them, were entitled to compensation at the rate of 55 per cent of his full weekly wages be sustained by sufficient

evidence? (4) Would such an award be according to law?"

Section 38 of our Compensation Act, *supra,* specifies certain persons as being "conclusively presumed" to be dependent, and then provides: "In all other cases questions of dependency in whole or in part, shall be determined in accordance with the fact as the fact may be at the time of the injury." The prime function of government is to assist its citizens in their struggle for better things—better education, better morals, higher standards of conduct and living. To attain these things it is necessary that the different qualities of our human nature shall receive due attention, development and training—things impossible where the person has only a bare subsistence. Evidently, a standard of bare subsistence—absolute necessities—was not such as was contemplated by the legislature when it passed the act in question.

There is no definite standard of dependency given to us by our compensation law. We speak of persons being *dependent* for support. Do we mean by this that they are dependent upon the earnings of some one for the bare necessities of life? Or do we mean that they are dependent for their support according to some standard? Are the earnings of the son necessary, and therefore relied upon, to assist in the support of the family, maintaining them in luxury, idleness and ease, or are the earnings of said son necessary, and therefore relied upon (depended upon) to keep and maintain the family and home in a condition and with surroundings suitable to their condition and station in life? Can we say that it was the intention of the legislature, and that by the act in question it has said to all parents who have been so unfortunate as to lose a son by

accidental death arising out of and in the course of his employment, who has been regularly employed and who has given all, or a substantial part, of his earnings to his father, who has used the same in maintaining the family in a condition suited to their condition and station in life, that they must forego all things that are not absolutely necessary, and that, if the earnings of the father are now sufficient to procure sufficient bread to sustain life and clothing sufficient to cover their bodies, they cannot claim compensation, as dependents, on account of the loss of the earnings of said son?

This act, being grounded in justice, and being economically sound, is construed liberally so that it shall accomplish the end for which it was enacted.

In the case of *In re Carroll* (1917), 65 Ind. App. 146, 116 N. E. 844, this court said: "To confine the inquiry to the question whether the family of the deceased workman could have supported life without any contributions from him, or whether such contributions were absolutely necessary in order that the family might be reasonably maintained is not a fair test of dependency; but rather the inquiry should include the question whether the contributions from the workman were looked to, depended and relied on, in whole or in part, by the family for means of reasonable support."

Also, *In re Peters* (1917), 65 Ind. App. 174, 116 N. E. 848, this court said: "It is clear that the word 'dependent' as used in the Indiana Workmen's Compensation Act should be given a meaning broad enough to include the reasonable needs of a parent in the proper support of himself and his dependent family. Such construction is in accord with the decisions in many well-considered cases in other jur-

isdictions where compensation laws are in force with similar provisions.''

It will be noted that the findings in this case are silent as to the amount reasonably necessary to support the family of the deceased in a manner

2. suitable to their condition and station in life.

If the earnings and income of the father were sufficient for that purpose, there could be no *legal* dependency upon the son who lost his life. There may have been an *actual* dependence upon the contributions of this son, from his wages, to help support the family, and these contributions may have been, by his parents, actually relied upon, but unless such contributions were reasonably necessary within the rule heretofore announced, such *actual dependency* could not be considered as being a *legal dependency* so as to entitle the parents to compensation. *Blanton* v. *Wheeler, etc., Co.* (1916), 91 Conn. 226, 99 Atl. 494, Ann. Cas. 1918B 747; *Benjamin T. Shaw Co.* v. *Palmatory* (1919), 30 Del. 197, 105 Atl. 417.

The statement being silent as to the amount of money reasonably necessary to support and maintain said family in a condition and manner

3-4. suitable to their condition and station in life, and the burden being upon the parent to show such need and legal dependency, each of said questions must be, and is, answered in the 'negative.