(No. 6505.   December 4, 1937.)

JOHN MILLER and MINNIE MILLER, Husband and
Wife, Appellants, v. G. L. ARNETT & SON, Employer,
FIREMEN'S FUND INDEMNITY COMPANY, Surety,
and STATE OF IDAHO, on the Relation of HARRY
C. PARSONS, State Auditor, Respondents.

[74 Pac. (2d) 177.]

George J. McFadden, for Appellants.

Weldon Schimke, for Respondents Arnett & Son et al.

AILSHIE, J.—This is a direct appeal from an order of the industrial accident board denying appellants compensation and is taken under the authority of the recent constitutional amendment, 1935 Sess. Laws, p. 377, and *Mundell v. Swedlund,* 58 Ida. 209, 71 Pac. (2d) 434, and chap. 175 of the 1937 Sess. Laws, p. 288. Appellants are the father and mother of Eugene Miller, whose death resulted from an accident which occurred on September 9, 1936, while he was engaged in the course of his employment with the respondents, G. L. Arnett & Son. Appellants filed their claim for compensation under the provisions of sec. 43–1102, I. C. A., on the ground that they were wholly or partially dependent upon their son for support and maintenance, within the meaning of the statute.

The state of Idaho appeared on relation of the state auditor and contended that the parents were not dependent on the son and that the sum of $1,000 should be paid to the state as provided by section 43–1101, subd. 6. The claim was set down for hearing and proofs were submitted, after which the board made and filed its findings, the material part of which, as involved on this appeal, is comprised in their finding No. XI and is as follows:

"That John Miller and Minnie Miller, parents of said Eugene Miller, now deceased, filed their claim for compensation in which they claim partial dependency upon the deceased, but that there is insufficient evidence or proof to

establish actual dependency of said claimants, either wholly or partially, or at all, as contemplated by the provisions of section 43–1101 of the Workmen's Compensation Act of the State of Idaho, and that the said John Miller and Minnie Miller, or either of them, are or is not entitled to an award of compensation under said Workmen's Compensation Law, or at all, and that any of the money given to the said claimants, John Miller and Minnie Miller, and/or either of them, by the said Eugene Miller from his earnings, were voluntary contributions, made for the purpose of bettering the said claimants' living conditions and not because of actual dependency, and to reimburse said claimants, or either of them, for the benefits deceased received as personal services from these said claimants, and that the relation of dependency of said claimants, John Miller and Minnie Miller, or either of them did not exist at the time of said accident resulting in the death of the said Eugene Miller, now deceased."

The only question presented on this appeal is: Were the appellants, the father and mother of the decedent, "actually dependent wholly or partially on the deceased."

The material and essential facts involved in this inquiry and contained in the record are substantially as follows: There is no dispute about the accident occurring while Eugene Miller was engaged in the course of his employment. At the time of the accident he was 22 years old. He had graduated from high school in 1933. He was unmarried and making his home with his parents. He had been an unusually apt student, was of high character, excelled in manual arts and had won a number of prizes and honors for excellence in a variety of studies, vocations and civic welfare work.

In the spring of 1933 the family purchased a small stump ranch of 80 acres, 40 of which were cleared, for which they contracted to pay $1500 and on which a balance of about $800 was unpaid. They had a small home in Plummer of the value of about $400. They had two sons at home: Ted, 24 years old, and Eugene (the deceased), 22 years old. They had two other sons who were married. The family was dependent on income from the farm and four cows and such assistance as the two boys furnished.

Eugene helped build a barn on the ranch, painted it, installed complete plumbing fixtures in the house, built a septic tank and drainage system, painted the house and built a woodshed, maintained a water pumping system and serviced the engine, and purchased and cared for a cream separator. During the years 1933, 1934, 1935 and a part of 1936 he worked on the ranch. The father, mother and brother testified to contributions and assistance which he rendered the parents as follows: Helped pay for the ranch by labor performed in planting and harvesting the crops, caring for the stock, etc.; bought a horse and helped purchase a binder, half interest in a disc, and a car for use on the ranch; paid $40 on the binder, $410 on the car and $80 for the horse; and contributed the wages he earned to the care of the home and whatever was needed about the ranch. In the spring of 1936 he worked on a ranch in Oregon about four months, received $2 per day and board. After the fourth of July he came home to do harvest work and got a job with Arnett & Son, contractors engaged in building an overhead passageway across certain railroad tracks in Benewah county. He employed a man to take his place on the ranch and paid his wages. At the time of his death his wages were $42 a week.

On September 9, 1936, while engaged in this construction work he was struck on the head by a 2x4 scantling falling about forty feet from the overhead structure, from which blow he died on September 17th. At the time of the boy's death the father was 58 years old and afflicted and periodically laid up with rheumatism and able to obtain work only about one-fourth of the time; his mother was 50 years of age and her health was about average for a woman of her age.

The statute under which this claim is asserted provides: (Sec. 43-1102, I. C. A.)

''The following persons, and they only, shall be deemed dependents and entitled to compensation under the provisions of this act: . . . .

''A parent or grandparent only if actually dependent, wholly or partially, upon the deceased. . . . . ''

■■ It is contended by the attorney general on behalf of the state that no dependency was shown, either wholly or partially, and his position is stated as follows:

"A parent is deemed a dependent and entitled to compensation, if at all, because of a contractual obligation, express or implied, formerly entered into between the deceased and the parent, and that must exist, as well as the relation of dependency, at the time of the accident. If no contractual obligation existed between the parent and the deceased, prior to and at the time of the accident, then the parent cannot be deemed a dependent, as dependency must be established through the contractual obligation, as distinguished from a statutory obligation, as applied to a child under the age of 18 years."

We are unable to accept or adopt such a theory for arriving at the conclusion that dependency of a parent does or does not exist where a son or daughter has been killed and the accident falls within the purview of the Workmen's Compensation Law. One may depend on receiving a gift, donation or honorarium from a certain person and that expectation may be so well founded that it will influence his action in making purchases and incurring legal liabilities, and still no contractual or other legal liability may exist whereby he can compel the fulfillment of his expectation. Just so may be the expectation of parents in regard to receipt of aid and assistance in their declining years from adult sons and daughters. By reason of all natural and moral obligations, they may rest upon the faith that such expectations will be realized, but there is no contractual liability either express or implied that they will do so. (No question of indigency under sec. 31–1002, I. C. A., arises in this case.)

The very nature of the relation and the circumstances under which such dependence arises precludes any inference or presumption of a contract existing between the dependent parent and the child. Furthermore, the purpose of the Workmen's Compensation Act as declared by sec. 43–902, "that all phases of the premises are withdrawn from private controversy, and sure and certain relief for injured workmen and their families and *dependents* is hereby provided . . . . and

*. . . . every other remedy, proceeding or compensation, . . . .* are hereby abolished, except as in this act provided,'' (italics supplied) would be thwarted if dependency of this character had to rest on contract. Such contention, if sustained, would leave every dependent parent, who loses a son by accident arising out of the course of his employment, without any legal remedy for his loss in every case where he does not have a contract whereby the son is obligated to contribute to his support.

We have no doubt but that the legislature intended that a parent should be allowed to recover compensation ''if actually dependent, wholly or partially, upon the deceased,'' whenever the proofs show that the parent had been receiving substantial assistance from the decedent in his lifetime and had reason to believe such assistance would have continued had the accident not occurred. Nor is it sufficient ground for denying relief in such case to show that the parent could have existed, or lived in a simpler and less comfortable manner without the assistance rendered. We should rather consider and determine whether the aid given and contributions made were devoted directly or indirectly to the support and maintenance of the parent and whether it enabled the parent to live more comfortably and enjoy life a little better than he could have done without such assistance.

There is a wide gulf between a mere existence and a comfortable living. There is an equally broad span between the ways in which different persons or families are accustomed to live and the things it takes to make them comfortable and satisfy their real or imaginary necessities and persistent needs. In this respect we think the board misapprehended and misconstrued the law by their eleventh finding wherein they say: ''that any of the money given to said claimants . . . . by the said Eugene Miller from his earnings were voluntary contributions, made for the purpose of bettering the said claimants' living conditions and not because of actual dependency,'' etc. Apparently the board adopted the view of the attorney general that the contributions must have been made under express or implied contract and therefore obligatory which, as we have above held, was

erroneous; and then the board also found that the contributions were "made for the purpose of bettering the said claimants' living conditions and not because of actual dependency." So it appears that the board does not consider voluntary contributions "made for the purpose of bettering the living conditions" of parents, even though continuous and persistent during the life of the decedent, as sufficient to render such parents "actually dependent, wholly or partially, upon the deceased."

We might well adopt with appropriate changes of names the language of the Kansas court in *Fennimore v. Pittsburg-Scammon Coal Co.*, 100 Kan. 372, 164 Pac. 265, 266, wherein it is said:

"But there is no definite standard of dependency, either total or partial. Perhaps the Legislature used the word 'dependent' in the dictionary sense of relying on the workmen's earnings for support. Support for what? The bare necessities of life, without which existence would be impossible, or support according to some standard? If according to some standard, what standard? One to which the dependent was accustomed, or one which the court might think reasonable under all the circumstances?

. . . . . . . . . . . .

"Accepting the statute just as it came from the Legislature, the court is of the opinion that the question before the district court was not one of how the domestic economies of the Fennimore family might have been arranged, or ought to have been arranged, but how they were arranged; and if the father and mother did in fact depend in part on the son's earnings, so that they suffered injury by being deprived of what they had relied on, they were entitled to recover."

As indicated above, we think and so hold that the ruling of the board in this respect is erroneous and if adopted would remove from the compensation law one of its beneficial aims and purposes. This view of the statute is reasonable and humane in principle and is supported by the reasoning of other courts and authorities. (*In re Stewart*, 72 Ind. App. 463, 126 N. E. 42; *In re McMahon*, 229 Mass. 48, 118 N. E. 189; *Thunder Lake Lumber Co. v. Industrial Com.*, 188 Wis.

418, 206 N. W. 177; *Appeal of Hotel Bond Co.*, 89 Conn. 143, 93 Atl. 245; *Gonzales v. Chino Copper Co.*, 29 N. M. 228, 222 Pac. 903; *McIntire v. Department of Labor, etc.*, 125 Wash. 370, 216 Pac. 7; *Geo. A. Lowe Co. v. Industrial Ins. Com. of Utah*, 56 Utah, 519, 190 Pac. 934; 28 R. C. L., p. 771, sec. 66; 71 C. J., p. 531, sec. 274.)

The order of the board is reversed and the cause remanded with directions that the board find in accordance with the construction of the law as hereinabove expressed, that the appellants were partially dependent on the deceased and that they make findings in harmony herewith, as to the extent and degree of dependency which existed, the average weekly wages of the deceased, and thereon make an award in accordance with the provisions of sec. 43–1101, I. C. A., as amended by chapter 147, 1935 Sess. Laws, and correlative sections, I. C. A. Costs awarded to appellants.

Morgan, C. J., and Holden, Budge and Givens, JJ., concur.