174 P.2d 836

### SANDERS v. RAY et al.
### No. 7297.

Supreme Court of Idaho.
Nov. 29, 1946.

E. B. Smith, of Boise, for appellants.

No appearance for respondent.

MILLER, Justice.

The record in this case discloses that the respondent, Freda Sanders, was married the first time to William Brandenburger at Ellendale, North Dakota, on the 19th day of August, 1933, and that there was born to said parties as the issue of said marriage, three children, to wit, Doloris Louise, James Delaine and Patricia Ann, who, on the 25th day of August, 1943, were respectively 9, 7 and 2 years of age; that on the said 25th day of August, 1943, the respondent obtained a decree of divorce from William Brandenburger in the District Court of the First Judicial District of Cass County, North Dakota, and that the custody and control of the above-named children were awarded to respondent, plaintiff in said action. It was further ordered, adjudged and decreed that William Brandenburger was obligated to support said

children, the amount necessary for that purpose to be agreed upon between the parties as the needs were determined. No modification of the judgment and decree has been made. On October 30, 1943, respondent married Floyd Milton Sanders at San Francisco, California. During the month of November and a part of December, 1943, the three minor children of Freda and William Brandenburger lived with Mr. and Mrs. Sanders and during said time the father of said children sent their mother, Mrs. Sanders, $100 per month for their support and maintenance. In December, 1943, by mutual consent, the father, William Brandenburger, took said children to his home in North Dakota, where they have continuously remained, and they were wholly and solely dependent upon their father for their support. Neither Mr. Sanders nor Mrs. Sanders contributed in any way to the support of said children and said children were in no degree dependent upon Mr. Sanders nor their mother, Mrs. Sanders, for their support from and after October 30, 1943, and on June 15, 1945, the date of the death of Mr. Sanders, said children were wholly dependent upon their father, William Brandenburger, for their support.

June 15, 1945, Floyd Milton Sanders died at Weiser, Idaho, as the result of a personal injury of the same date by accident arising out of and in the course of his employment. He was then in the employ of Gordon Ray of Twin Falls, Idaho, and the Idaho Compensation Company was surety. Mrs. Sanders was then residing at Baker, Oregon. August 30, 1945, she filed claim for compensation. She was living with Mr. Sanders at the time of the accident resulting in his death and was the only claimant. On August 30, 1945, there was filed with the Industrial Accident Board a compensation agreement in which Freda Sanders, widow, Gordon Ray, employer, and Idaho Compensation Company, surety, were the participants and signers. Therein it is shown that Mrs. Sanders, widow of Floyd M. Sanders, deceased, is the sole dependent; that it is agreed the surety will pay $200 funeral expenses of the deceased and monthly installment payments to Mrs. Sanders of $52 from and after June 15, 1945, and up to February 16, 1953, being $12 per week for 400 weeks, and that said agreement was subject to the approval of the Industrial Accident Board; that in the event of the remarriage or death of said widow, the compensation shall cease. On January 29, 1946, a hearing was had before the Industrial Accident Board at Weiser, Idaho. No one appeared for Freda Sanders, Doloris Louise Brandenburger, James Delaine Brandenburger, Patricia Ann Brandenburger, or William Brandenburger, and E. B. Smith appeared on behalf of Gordon Ray, employer, and Idaho Compensation Company, surety. A number of exhibits were admitted in evidence. Among admitted exhibits is a statement in writing, by William Brandenburger, in which it is shown that after the marriage of Mr. and Mrs. Sanders he took

the aforementioned children into his possession and has supported them thereafter, and "At no time did Milton Sanders in any way contribute to their support."

February 14, 1946, the Industrial Accident Board, after consideration of the proofs adduced, including the compensation agreement filed August 30, 1945, made and filed its findings of fact, rulings of law and award. Among other things, it is said that: "The Board did not approve said agreement, and on its own motion set the matter down for hearing," and further observed, "None of the facts hereinbefore found is in dispute. There is no question concerning the payment of burial expenses or concerning death benefits payable to the claimant widow in her own right. As stated by counsel for defendants, 'there is a question concerning the right to compensation benefits of the alleged stepchildren of Floyd M. Sanders, deceased.' This is the sole issue in the matter and it is one of law. Rephrased, the question is: Are the minor children of the deceased workman's widow the 'stepchildren' of the deceased, and as such dependents entitled on account of his death to benefits under the Workmen's Compensation Law?" From said findings, the Board made its rulings of law and held, "In this case the above named minor children of the claimant's (sic) widow, as well as she herself, are entitled to death benefits." The Board further held, that under the law, death benefits are computed herein to the dependent widow, Freda Sanders, claimant, for the use and benefit of herself and her three minor children hereinabove named, compensation at the rate of $12 per week for a period of 400 weeks from July 15, 1945, or until the death or remarriage of said widow prior to the expiration of said 400 weeks, and upon the cessation of payments to said widow, compensation at the rate of $12 per week to or for the use and benefit of all or any of the three above-named minor children then living, unmarried and under the age of 18 years, until they respectively arrive at the age of 18 years, die or marry, in any of which events compensation shall be payable for the use and benefit of the remaining child or children still eligible and qualified as dependents. From said findings of fact and rulings of law, the Industrial Accident Board made its award to the effect that the dependent widow, Freda Sanders, and her three minor children were entitled to compensation at the rate of $12 per week for a period of 400 weeks from July 15, 1945, or until the death or remarriage of said widow prior to the expiration of said period of 400 weeks, and that upon the cessation of payments to said widow, compensation at the rate of $12 per week for the use or benefit of all or any of the three above-named minor children then living, unmarried and under the age of 18 years until they respectively arrive at the age of 18 years, die or marry, in any of which events, compensation shall be payable to or for the use and benefit of the remaining child or children while still eligible and qualified as dependents, and that

under the law this award is the several obligation of each of the defendants but that payment by one of them relieves the others pro tanto.

March 7, 1946, notice of appeal from the award was served.

Neither Freda Sanders, claimant, widow, the Industrial Accident Board, nor William Brandenburger, as guardian or otherwise of the three minor children, have filed briefs in opposition to the brief of appellants, the employer and surety. The ruling of the Industrial Accident Board that the "stepchildren" of the deceased are dependents, under the facts herein disclosed, is a first impression case in this jurisdiction, and the reason for such holding and award is predicated upon portions of sections 43-1105 and 43-1102 of the Workmen's Compensation Law of this state. The applicable portions of said sections are as follows:

43-1105. "As used in the foregoing sections the term 'child' includes step-children, adopted children, posthumous children, and acknowledged illegitimate children, but does not include married children unless dependent. * * *."

43-1102. "The following persons, and they only, shall be deemed dependents and entitled to compensation under the provisions of this act:

"A child under eighteen years of age, or incapable of self-support and unmarried, whether actually dependent upon the deceased or not. * * *."

■ The rule of liberal construction in favor of dependents is particularly applicable under the Workmen's Compensation Law.

In order, however, for the Industrial Accident Board to hold that the Brandenburger children were legal dependents of the deceased, it undoubtedly concluded that the above-quoted statutes must be strictly as well as liberally construed, and that a "stepchild," being included in the same category as a "child," and that a "child," otherwise eligible, is deemed a dependent, "whether actually dependent upon the deceased or not," it follows that a "stepchild" would succeed to the same rights and privileges as a "child," and, accordingly, would be properly deemed a dependent, irrespective of the fact that the stepparent has never taken the "stepchild" into his home and treated it as he would a member of his own family, or placed himself in loco parentis.

■ Counsel for appellants invites attention to Section 31-1002, I.C.A., and succeeding sections under the same chapter, to the effect that reciprocal duties on the part of parent and child are statutory in Idaho. The reciprocal duties therein mentioned provide a duty and liability of the father, mother, child or children of a poor person who is unable to maintain himself or herself by work. The maintenance of such poor person to the extent of his or her ability, etc., is not a part of the Workmen's Compensation Law, and has no ap-

plication or relationship to the question here involved.

We have examined the leading cases cited in appellants' brief and there urged in support of appellants' contention that the stepchildren heretofore mentioned were not legal dependents of Floyd M. Sanders, deceased.

The case of Rockwood v. Rockwood, 65 Utah 261, 236 P. 457, 459, is inapplicable for the reason that the question therein involved was presented on an application to modify a judgment and decree of divorce and to relieve the father from the further payment of monthly installments because the mother had remarried. After citing a number of authorities to the effect that "remarriage of a divorced wife does not ipso facto terminate the former husband's obligation to pay the alimony decreed," and that "a stepfather is under no legal obligation to support his wife's children by a former marriage," and that "if the minor children of the wife are recognized and treated as members of the family of their stepfather, and are supported and maintained by him, there can be no doubt that he stands to them in loco parentis." The children mentioned in the above case were living with the mother and stepfather. The case is decided on the question of the sufficiency of the application and the proof thereunder to modify the decree, and in which it is said: "In these considerations it is our bounden duty to hold that the pleading of defendant does not state facts sufficient to constitute a cause of action; nor is the defect in any manner cured by the evidence." In the above case, together with the citations therein, the court was construing general statutes not included in the Workmen's Compensation laws.

Sargent v. Foland, 104 Or. 296, 207 P. 349, 350, is a case wherein the stepchild brought an action against Harley Foland, as executor of the estate of Walter Kinnaman, deceased, stepfather, for services rendered the stepfather during his lifetime. About November 1, 1916, he became blind and "caused a letter to be written to the stepson, who was an unmarried man, stating that he 'wanted me to come to Tillamook.'" Sargent complied with the request and went to Tillamook, arriving there about December 1, 1916. Kinnaman and his wife lived in the city of Tillamook until about March 15, 1917, "when they and Sargent moved upon a 20-acre farm owned by Walter Kinnaman and located in Tillamook county near a place called Beaver." Sargent had not seen the farm prior to moving there, and said that his stepfather told him "'that the place would run eight cows by fixing it up,'" and that "'he told me he would give me half of the proceeds of the farm and I could go out and work if I wished to do so.'" The court, in passing upon the questions involved, held, (Page 352 of 207 P.):

"The relation of parent and child of itself creates reciprocal rights and duties. On the contrary, the relation of stepfa-

ther and stepchild does not of itself impose any duty upon one to the other or create any right assertable by one against the other. The mere fact that one is the stepfather and the other a stepson does not impose upon the one the duty of support or upon the other the duty of service. (Citing Authorities)

"A stepfather does not, merely because of the relation, stand in loco parentis to his stepson. If, however, a stepfather receives a stepchild into his family and treats the child as a member of his family, he places himself in loco parentis, and the reciprocal rights and duties of parent and child are thus created and will continue to exist as long as the stepfather continues to stand in that position. (Citing Authorities.)" Sargent sought to recover $1,000 for the services alleged to have been rendered. The defendant admitted that plaintiff earned $300 and that no part thereof had been paid. The jury returned its verdict for said $300 and the judgment was affirmed.

The case of Harris v. Lyon, 16 Ariz. 1, 140 P. 825, 826, was an appeal from an order of allowance and settlement of guardian's account and from an order authorizing and directing the guardian to sell real estate of ward. In 1906, Lyon married May Harris, mother of Emma J. Harris, who was then 10 years old. The mother died in June, 1907, leaving no estate, and from that time on Emma Harris lived with her grandmother. Lyon, the stepfather, was a party to an arrangement that the stepchild should live with her grandmother, he to furnish her housing, clothing, food and medical attention and generally provide for them. That arrangement continued from June, 1907, until March, 1912. On the last-mentioned date he secured letters of guardianship of both the person and estate of the minor. The estate of which he was appointed guardian consisted of 160 acres of land in Yuma County, filed upon by May Harris under the federal homestead law before her marriage to Lyon. After the death of the entrywoman, Lyon continued to improve and cultivate the land to comply with the homestead act, and in course of time final proof was made. The final receipt was issued by the government March 10, 1913, and in June of that year a patent was issued to the heirs of the entrywoman. Lyon, the stepfather, predicated his account against the minor stepchild, as follows: " 'That since the death of the mother of said minor, May Lyons, on June 17, 1907, affiant has, out of his own funds, cared for and maintained said minor, she not having any estate or income whatsoever, except her prospective interest in said land, which until this time has always been uncertain, remote, and practically valueless * * *.' " In passing on the questions involved, the court said: "On a new trial, the court should disallow the appellee's claim for care and maintenance and money laid out in cultivating and improving land, attorneys, and in fact all expenditures prior to his appointment as guardian.

The appellee should be allowed all necessary expenditures since his appointment as guardian that have been made for the support of his ward or the protection of her rights in homestead * * *." From the foregoing, it will be seen that the application of Workmen's Compensation Laws is not involved.

Under Points and Authorities, No. VII, appellants say: "A stepchild, not a member of the family nor dependent on the stepfather for support, may not recover under the workmen's compensation law." In support of said statement, there is cited, Ramey v. Portsmouth By-Product Coke Co., 234 Ky. 75, 27 S.W.2d 415; Travelers Ins. Co. v. E. I. DuPont DeNemours Co., 1 Terry, Del., 285, 9 A.2d 88; and Johnson v. Midland Constructors, 152 Fla. 289, 11 So. 2d 895.

In the Ramey-Portsmouth case, supra, the recitals show that at the date of the marriage, Mrs. Ramey was the mother of Earl Miller by a former husband; that she associated with men frequently and acquired an unsavory reputation. One of the men was a desperate and dangerous character, and that Ramey knew his reputation and had said he would either have to kill some one, get killed, or leave, so he paid his bills, notified merchants to extend no further credit to Mrs. Ramey and left, and never lived with her again. The court held that her acts and conduct were responsible for the separation. Some time thereafter, Ramey was killed in the mine where he worked. Mrs. Ramey did not attend his funeral, but immediately filed a claim with the Workmen's Compensation Board for compensation for Ramey's death. A member of the board allowed her and Earl Miller, Ramey's stepson, $12 per week for 335 weeks, which award was confirmed by the full board. The award was set aside by the Circuit Court, and Mrs. Ramey and Earl, her son, appealed. In passing on the question involved, the Supreme Court said:

"To entitle these claimants to compensation, there must be some competent evidence showing dependency, and there was none. For the claimants, the contention is made that by section 4894 these claimants are presumed to be dependent. The applicable provisions of section 4894 are:

" '(a) A wife upon a husband whom she had not voluntarily abandoned at the time of the accident; * * * (c) a child or children under the age of sixteen years, or over sixteen years if incapacitated from wage-earning, upon the parent with whom such child or children are living or by whom actually supported at the time of the accident.' "

In construing the status of the stepson, it is said: "To raise a presumption that a child was dependent on a deceased parent or stepparent, there must be proof to establish both the relationship and that the child actually lived with or was supported by the deceased."

The Travelers-DuPont case, supra, had to do with the so-called subrogation clause of the Workmen's Compensation Act, which is very similar to our own, but it appears that the rights of children or stepchildren were not involved therein and that said case has no application to the question here involved.

In the Johnson-Midland case, supra [152 Fla. 289, 11 So.2d 896], it is said:

"In the case at bar, we are confronted with the obligation of the husband to support the wife and stepchild. As to the wife, both law and morals require the husband to support her if she is living with him at his death or apart from him for justifiable cause. It is shown that Johnson voluntarily deserted his wife; they were not divorced at the time of his death and he was not contributing to her support. We do not think that the fact that she was working for a modest compensation affected her status under the Workmen's Compensation Act. * * *.

"As to the minor stepchild, it appears that the law Section 2(12) Workmen's Compensation Act, Section 440.02 (13), Florida Statutes 1941, [F.S.A.], places the stepchild in the same category as the natural child and as with the wife makes the husband responsible for its support. The law in other words determines the question without reference to dependency."

Under the Florida statutes above mentioned, "(13) 'Child' shall include a posthumous child, a child legally adopted prior to the injury of the employee, and a stepchild or acknowledged illegitimate child dependent upon the deceased, but does not include married children unless wholly dependent on him. * * *." It will be observed from the above that the test as to dependency is whether or not at the time of the accident the stepchild was "dependent upon the deceased."

We have found no laws relative to children and stepchildren identical with the laws (43-1105 and 43-1102) of this jurisdiction. The nearest approach thereto, we think, will be found in the laws of the commonwealth of Pennsylvania, the applicable portion being as follows: Section 307, 77 P.S. § 562. " * * * Compensation shall be payable under this section to or on account of any child, * * * If members of decedent's household at the time of his death, the terms 'child' and 'children' shall include stepchildren, adopted children and children to whom he stood in loco parentis, and shall include posthumous children. * * *." Morris v. Glen Alden Coal Co., 136 Pa.Super. 132, 7 A.2d 126.

It will be observed from the foregoing that there are two conditions or qualifying factors in the above-mentioned law that are not contained in the Idaho laws, that is, "members of decedent's household at the time of his death," and that decedent "stood in loco parentis." The following cases feature the question of the right of stepchildren to compensation of a deceased stepparent, but none of said jurisdictions

from which taken has the same law as has this jurisdiction, to wit: Hill v. Nafziger Baking Co. et al., 227 Mo.App. 846, 57 S.W. 2d 773; Shanley v. Slattery Contracting Co., Inc. et al., 232 App.Div. 860, 248 N. Y.S. 774; Travelers' Ins. Co. et al., v. Williamson, 35 Ga.App. 214, 132 S.E. 265; Newark Paving Co. v. Klotz, 85 N.J.Law 432, 91 A. 91; Sharp v. Borough of Vineland, 183 A. 911, 14 N.J.Misc. 256.

■ Appellants complain that no claim for compensation on behalf of the stepchildren has been made or filed. A hearing was had before the board at Weiser, Idaho, and the board had before it a substantial record of the case, including the status of the stepchildren, and found that said stepchildren were legal dependents. Under the circumstances, we think it was not error for the board to cause the stepchildren to be included in the award along with the mother as dependents of the decedent stepfather. Hiebert v. Howell, 59 Idaho 591, 85 P.2d 699, 120 A.L.R. 388. If, as under the Idaho laws, the term "child" includes "stepchildren," does it mean that there are rights, privileges or benefits available to a child that are not available to a stepchild, or are children and stepchildren to enjoy the same rights, privileges and benefits and to the same extent and in the same manner as though of the same blood relationship? In other words, if the same rights, privileges and benefits exist, would it not follow as a sequence that if a child under 18 years of age "shall be deemed" a

dependent, "whether actually dependent upon the deceased or not," would not the same rights, privileges and benefits apply with equal force to stepchildren and that they, too, would be deemed dependents "whether actually dependent upon the deceased or not."

It may appear legally unjust that a stepchild not a member of the decedent's household nor in loco parentis at the time of decedent's death, whose care, support and maintenance are amply provided by another is a dependent, irrespective of conditions or circumstances, and especially so where such stepchild never was in the household of the decedent, or if so, only temporarily, is entitled to compensation "whether actually dependent upon the deceased or not."

■ The legislature had full power and authority to determine the classes of persons to whom compensation shall be paid, and to prescribe the conditions and limitations as is deemed proper for each class. If the legislature has enacted laws that are unjust and result in hardships, the correction thereof should be addressed to that body. The Workmen's Compensation Laws are special laws and control over general laws. No equitable construction is permissible. This court cannot by judicial action amend the law.

If the Workmen's Compensation Laws of this jurisdiction contained provisions such as are contained in the laws of other jurisdictions; that is, "standing in loco parentis," or a "member of the decedent's

household at the time of the accident," or "were being supported by the stepfather prior to his accidental injury and death," then the stepchildren herein mentioned would be excluded as dependents of the deceased stepfather.

Because, however, of the statutory provisions under consideration, we conclude that the Industrial Accident Board was correct in holding in its rulings of law and award that the three stepchildren of Floyd M. Sanders, deceased, as well as Freda Sanders, widow, were legally dependents and entitled to compensation. The award is affirmed.

BUDGE, GIVENS, and HOLDEN, JJ., and SUTPHEN, D. J., concur.