511 P.2d 309 (1973)
95 Idaho 490
In re Lyle Phillip HAYNES, Deceased.
LaVerne HAYNES, Claimant-Appellant,
v.
J. E. HALL CONTRACTORS, INC., Employer, and Argonaut-Northwest Insurance Company, Surety, Defendants-Respondents.
No. 10979.
Supreme Court of Idaho.
February 26, 1973.
On Rehearing June 26, 1973.
*310 Owen L. Knowlton, D.K. Worden, Lewiston, for appellant.
John W. Barrett of Moffatt, Thomas, Barrett & Blanton, Boise, for respondents.
BAKES, Justice.
This is an action by a surviving widow for benefits pursuant to I.C. § 72-302[1] for the death of her husband arising out of his employment. The applicable statute, I.C. § 72-302, read in part as follows:
"Dependents.  The following persons, and they only, shall be deemed dependents and entitled to compensation under the provisions of this act:
......
"The widow only if living with the deceased at the time of the accident, or actually dependent wholly or partially, upon him.
......

*311 "The relation of dependency must exist at the time of the accident." (Emphasis supplied).
The decedent, Lyle P. Haynes, died in an industrial accident in Clearwater County, Idaho, on October 20, 1970. Prior to the latter part of 1967, claimant and decedent had lived together in Newport, Washington, as husband and wife, together with their two minor children. The record indicates that claimant and decedent separated because they were not getting along and were having some financial trouble.
Between the time of the separation of claimant and decedent in the latter part of 1967 and decedent's death on October 20, 1970, the decedent furnished the claimant with the following financial support as shown by the record before this Court:
1. After their separation, decedent made four or five payments on claimant's car, which payments were in the amount of $87.22 each. This would amount to either $348.88 or $436.10.
2. Shortly after the separation, claimant used decedent's credit card to purchase gasoline, and decedent paid the bill.
3. The decedent paid claimant's automobile insurance for at least a portion of the time after their separation.
4. Sometime during the period between the separation and decedent's death, their oldest daughter had an illegitimate child and when claimant could not take care of the medical expense by herself she requested assistance from her husband to pay the medical bills which she apparently had obligated herself for on behalf of her daughter. The decedent sent her money to help with those bills. The record does not disclose the exact amount which he sent.
5. The record discloses that on numerous occasions the decedent sent cash to the claimant when she requested it, and while the claimant was unable to state the exact amount she did indicate that she received $60 for Christmas in 1968, and in the year 1970 she testified that the decedent sent money on six or eight different occasions, the smallest amount being $40. Also, she testified that she received financial help in 1969.
As to the need for support from decedent, the transcript clearly discloses that the claimant needed this support and received it.[2] Apparently decedent also sent money to their daughter who, together with her illegitimate child, was living with claimant.
From the foregoing the board found that "there is no substantiating evidence concerning the amount of contribution or frequency of contribution" and that "the claimant during the period of said separation maintained a standard of living within her own individual income and did not rely upon contributions by the decedent to maintain her customary established mode of living" and stated as a conclusion of *312 law that "within the meaning of Section 72-302 I.C. that the claimant was not actually dependent, wholly or partially, upon the decedent for her support and is therefore not entitled to benefits as the surviving widow of the decedent." The record discloses that during the last year of his life decedent earned only $5,848.34, while the claimant earned $6,434.01. However, the decedent only worked for less than ten months of the year and the wife received in excess of $1,000.00 severance pay when she left her employment with Boeing.
The sole assignment of error and the only issue to be determined on this appeal, and the point on which this case will turn, is whether or not the claimant was "actually dependent, wholly or partially," on the decedent within the scope of I.C. § 72-302 at the time of decedent's death.
The most recent pronouncement of this Court regarding dependency in workmen's compensation cases was in In re Konin, 69 Idaho 28, 202 P.2d 239 (1949), where a widow-claimant was denied compensation on grounds that she was not partially or wholly dependent on her deceased husband. In that case the decedent-husband never contributed to the claimant's support or communicated with her after they separated, and the claimant did not look to the deceased for support of any kind whatsoever. The Court stated in Konin that "[n]o hard and fast rule can be laid down as to what constitutes actual dependency under our statute. It is after all a question of fact and each case must rest and be decided upon its own particular facts and circumstances," 69 Idaho 28, at 31, 202 P.2d 239, at 241 (omitting citations), and that "[t]he legal obligation to support, standing alone, will not establish actual dependency. (Omitting citations)," 69 Idaho 28, at 32, 202 P.2d 239, at 241.
In the case at bar we are faced with a factual situation somewhat different from that encountered in Konin, as the decedent in the present case maintained communication with his family and did provide some financial assistance to the claimant following their separation. In the present case, the Industrial Accident Board determined in effect that the contributions made after decedent and claimant separated were nominal payments and that claimant was not actually dependent, either wholly or partially, upon decedent, concluding that claimant was not entitled to benefits under I.C. § 72-302 as the surviving widow.
In Miller v. G.L. Arnett & Son, 58 Idaho 420, 74 P.2d 177 (1937), this Court reversed the Industrial Accident Board and allowed the parents of a deceased son to recover benefits under the workmen's compensation statute in question here. In Miller the Court, regarding dependency as used in the statute, said:
"We have no doubt but that the Legislature intended that a parent should be allowed to recover compensation `if actually dependent, wholly or partially, upon the deceased,' whenever the proofs show that the parent had been receiving substantial assistance from the decedent in his lifetime, and had reason to believe such assistance would have continued had the accident not occurred. Nor is it sufficient ground for denying relief in such case to show that the parent could have existed, or lived in a simpler and less comfortable manner, without the assistance rendered. We should rather consider and determine whether the aid given and contributions made were devoted directly or indirectly to the support and maintenance of the parent, and whether it enabled the parent to live more comfortably and enjoy life a little better than he could have done without such assistance." 58 Idaho 420, at 426, 74 P.2d 177, at 180.
The testimony of the claimant in this matter was largely uncontested, as one would expect, since she alone would be the only person likely to have personal knowledge of the facts concerning the support. Cross examination disclosed that she was unable to indicate with preciseness the total amount of contributions which the decedent made to her. However, claimant *313 stated that at the time she was receiving the support from her husband she had no idea that she would be called upon at a later time to account for the amounts, and therefore had no reason to keep track of how much she received. In addition to her oral testimony, claimant did produce some documentary evidence in support thereof. However, most of the evidence in support of her claim was her own testimony.
This Court has held many times that the Workmen's Compensation Act is to be construed liberally in favor of claimants who, because of its enactment, have been deprived of any claims in tort for negligent death of a decedent. Miller v. FMC Corporation, 93 Idaho 695, 471 P.2d 550 (1970). As we said in Smith v. University of Idaho, 67 Idaho 22, 170 P.2d 404 (1946):
"However, `all courts are agreed that there should be accorded to the Workmen's Compensation Act a broad and liberal construction, that doubtful cases should be resolved in favor of compensation, and that the humane purposes which these acts seek to serve leave no room for narrow technical construction. * * *'" 67 Idaho 22, at 26, 170 P.2d 404, at 406.
This rule of liberal construction applies to dependents as well as injured workmen. Sanders v. Ray, 67 Idaho 200, 174 P.2d 836 (1946). The problem in this case arises over the fact that the Industrial Accident Board has made findings to the contrary and this Court has a rule of long standing that the findings of the Industrial Accident Board will not be disturbed on appeal if they are supported by substantial and competent evidence. Madron v. Green Giant Co., 94 Idaho 747, 497 P.2d 1048 (1972); Kern v. Shark, 94 Idaho 69, 480 P.2d 915 (1971); Profitt v. DeAtley-Overman, Inc., 86 Idaho 207, 384 P.2d 473 (1963); In re McDaniel, 84 Idaho 7, 367 P.2d 302 (1961); Flasche v. Bunker Hill Co., 83 Idaho 420, 363 P.2d 1024 (1961).
In this case, however, we are of the opinion that the Board's findings are not supported by the evidence. This is not a case of conflicting evidence which the Board has resolved in favor of one party or the other, but a case involving the legal effect to be given to evidence which was primarily uncontroverted though somewhat weakened by cross examination. We acknowledge that there is no hard and fast rule as to what constitutes dependency under the Workmen's Compensation statute. However, the language cited from Miller v. G.L. Arnett & Son, supra, is helpful. In cases of this kind we should not consider and be concerned with whether the claimant could have existed without the aid but rather whether the assistance given by the decedent was substantial and whether it enabled his family to enjoy a better life than they could have done without such help and assistance.
We are of the opinion that the assistance given during the period of separation was substantial, and when taken in light of the fact that claimant stated on several occasions that she relied on decedent's help and support and received it, and construing the Act liberally in favor of compensation, we are of the opinion that the findings of the Industrial Accident Board are not supported by the record. Accordingly, the order entered by the Board denying claimant benefits as the surviving widow is reversed and remanded for disposition consistent with this opinion.
Order reversed and remanded. Costs to appellant.
SHEPARD, McQUADE and McFADDEN, JJ., concur.
DONALDSON, Chief Justice (dissenting).
Where, as here, it was undisputed that the claimant and the deceased were not living together at the time of the fatal industrial accident, the burden of proof was on the claimant to establish that she was, at the time of the accident resulting in death, actually dependent wholly or partially upon the deceased. In re Konin, 69 Idaho 28, 31, 202 P.2d 239 (1949). In this *314 case, the Industrial Accident Board in effect concluded that the claimant failed to meet her burden of proving actual dependency. As this Court stated in Manning v. Potlatch Forests, Inc., 93 Idaho 855, 857, 477 P.2d 97, 99 (1970):
"On appeal from a decision of the Industrial Accident Board our consideration is limited to questions of law. Idaho Constitution art. 5, § 9; I.C. §§ 72-608, 72-609. In this opinion `burden of proof' is used in the sense of a `persuasion burden.' A decision on the part of a trier of fact that he is not persuaded, i.e. the burden of proof has not been met, as to the existence of some material and necessary fact is very much like a formal finding of fact. It is actually a finding that a particular fact can not be found to the requisite certainty. See F. James, Civil Procedure, 248-50 (1965). We should, therefore, show deference to the Industrial Accident Board's conclusion that a burden of proof has not been met, in much the same fashion as we defer to affirmative findings of fact of the Board." See also Hamby v. J.R. Simplot Co., 94 Idaho 794, 797, 498 P.2d 1267 (1972).
Furthermore, it is within the province of the Industrial Accident Board to determine the credibility of witnesses, the weight to be assigned their testimony, and the reasonable inferences to be drawn from the record as a whole. Earl v. Swift & Co., 93 Idaho 546, 467 P.2d 589 (1970); Diffendaffer v. Clifton, 91 Idaho 751, 430 P.2d 497 (1967). And although it is true that doubtful workmen's compensation cases should be resolved in favor of compensation, "this rule cannot be expanded in the area of the board's factual determinations supported by substantial, competent evidence." Bennett v. Bunker Hill Co., 88 Idaho 300, 305, 399 P.2d 270, (1965).
In Miller v. G.L. Arnett & Son, 58 Idaho 420, 74 P.2d 177 (1937), relied upon by the majority, the claimants received "continuous and persistent" contributions during the life of the decedent. In that case, the court in effect defined a dependent as one who has a reasonable expectation of continued assistance; thus, the Court stated:
"One may depend on receiving a gift, donation or honorarium from a certain person, and that expectation may be so well founded that it will influence his action in making purchases and incurring legal liabilities * * *. Just so may be the expectation of parents in regard to receipt of aid and assistance in their declining years from adult sons and daughters." 58 Idaho at 425, 74 P.2d at 179 (emphasis added).
The Court went on to say that the legislature intended to allow recovery whenever the claimant's proof shows that he "had been receiving substantial assistance from the decedent in his lifetime, and had reason to believe such assistance would have continued had the accident not occurred." Id. at 426, 74 P.2d at 180. In other words, in addition to showing that the deceased's past contributions enabled the claimant to enjoy a better life, the claimant must also prove that he had a reasonable expectation of continuing future support. See Park Utah Consol. Mines Co. v. Industrial Commission, 84 Utah 481, 36 P.2d 979, 982 (1934). As required by the statute itself, "[t]he relation of dependency must exist at the time of the accident."
In my view, the record in this case fully justifies the Board's conclusion that the claimant failed to prove that she was actually dependent, even in part, upon the decedent at the time of the accident which caused his death. The Board found that (1) the claimant could not have reasonably anticipated cash contributions, "if any," from the decedent with any degree of regularity or certainty; (2) if any cash contributions were made by the decedent, such were not relied upon by the claimant for her support; and (3) while the claimant was separated from her husband, she maintained her customary standard of living by means of her own individual income and without relying upon contributions made by *315 the decedent. As the majority admit, most of the claimant's proof consisted of her own testimony; and most of this testimony related to assistance rendered prior to 1970, the year of her husband's death. The record contains only very weak evidence tending to show the existence of a state of dependency at the time of the accident which resulted in the death of the claimant's husband. Similarly, there is not much evidence to prove that the claimant had a reasonable expectation of continuing future contributions. Since the claimant was employed and was earning an income approximately equal to that of the decedent, there is substantial, competent evidence to support the finding of the Board that the claimant was, without relying upon the decedent, living in the style to which she was accustomed. Although it is true that the testimony of the claimant was largely uncontested, this does not mean that the fact finder had to believe all her testimony. As stated above, it is within the province of the Board to determine the credibility of witnesses. Moreover, regard should be given to the special opportunity of the Board to judge the credibility of those witnesses who appear personally before it. Cf. I.R.C.P. 52(a).
In the case at bar, the Board in effect decided that the claimant's burden of proving actual dependency had not been met. Since it cannot be said that this decision was so unreasonable as to be erroneous as a matter of law, the Board's order should be affirmed. Manning v. Potlatch Forests, Inc., supra 93 Idaho at 858, 477 P.2d 97. Therefore, I dissent.

ON PETITION FOR REHEARING
BAKES, Justice.
After the matter was rebriefed and reargued on rehearing we adhere to the views expressed in our earlier opinion and the conclusion reached therein. We have reviewed the testimony of the claimant which we described in our original opinion as having been "weakened by cross examination," and we are of the opinion that claimant's testimony on cross examination and her answers to interrogatories regarding the amounts which her husband paid to her during their separation were not necessarily inconsistent with her direct testimony. Therefore we are even more convinced that claimant's testimony established actual dependency in part and as a matter of law.
SHEPARD, McQUADE and McFADDEN, JJ., concur.
DONALDSON, C.J., adheres to the views expressed in his dissenting opinion.
NOTES
[1] Now I.C. § 72-410. S.L. 1971, ch. 124.
[2] "Q. MR. WORDEN: Was there ever any time, between the time that you moved to Everett and the time of his death, that he refused to pay anything that you requested?

"A. No.
"Q. Did you need his support, his help?
"A. Different times, yes.
"Q. And you requested it and got it?
"A. Yes." (Tr., p. 25).
Regarding medical bills:
"Q. Did you request your husband's assistance as to this?
"A. Yes, I did because I couldn't handle it all by myself." (Tr., pp. 18-19).
At another point the claimant states:
"THE WITNESS: He had sent me money to use when I needed to pay on medical bills, ..." (Tr., p. 52).
--------
"Q. During 1969, did he do the same thing?
"A. A few times. More that particular year, I asked him for money for certain items and he would send the amounts I asked for." (Tr., p. 60).
--------
"A. If I didn't have the money, I told him and he paid them." (Tr., p. 38).